THORNTON TULEY, Respondent, v. THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, May 13, 1890.**

1. **Railroads:** NEGLIGENCE. The presumption of negligence from the mere fact of injury to a passenger on a railroad train does not obtain, where the passenger is injured owing to his being in a part of the car where he had no right to be, and there is no evidence that the injury would have occurred, if the passenger had been in his proper place. *Held,* accordingly, that a passenger on a freight train riding on a projection or cupola several feet above the roof of a caboose, where there were no guards of any sort, and thrown therefrom by the jar caused by the coupling of a switch engine to the train, cannot recover upon mere proof that the injury was caused by such jar.

2. ———:  ———: CONTRIBUTORY NEGLIGENCE. *Held,* further, by the majority of the court (THOMPSON, J., expressing no opinion) that the plaintiff was debarred from a recovery by his own contributory negligence in riding on such cupola or projection.

*Appeal from the Marion Circuit Court.*—HON. THOS. H. BACON, Judge.

REVERSED.

*W. M. Boulware* and *Strong & Mosman*, for appellant.

*H. J. Drummond* and *Anderson & Schofield*, for respondent.

ROMBAUER, P. J.—The plaintiff, a stock-drover in charge of two carloads of cattle, took passage on one of defendant's freight trains, at Hannibal, Missouri, for Chicago, Illinois, agreeing in a live-stock contract with the defendant to accompany and care for said stock while in transit. After the train had traveled twenty miles or more, and while it was in defendant's yards at Quincy, Illinois, a switch engine of defendant was coupled to the caboose of the freight train, which was the last car on the train and on the rear end of which the plaintiff was sitting on a projection or cupola, rising two and a half or three feet above the roof of the caboose, and having no side or back rails or guards of any sort. By the jar caused by this engine striking the caboose, the plaintiff was thrown from his seat and sustained serious injuries by the fall, for which he sues.

Defendant's answer was as follows: "For amended answer the defendant admits that, at the date alleged in the petition, defendant was and is a railroad corporation, but denies each and every allegation in plaintiff's petition contained.

"Further answering, defendant avers that the plaintiff's alleged injuries, if he suffered any such, were caused solely by the careless and negligent acts and omissions of plaintiff at the time alleged, in that he voluntarily and unnecessarily exposed himself to danger in a place on said train not provided nor intended for use by passengers thereon, and to danger which would not be incident to travel on said train, if he had been in a position and place provided for passengers.

"Defendant avers that said injuries were not occasioned by any negligence or fault of this defendant, its servants or agents thereto contributing in any manner or degree."

The plaintiff recovered judgment below, and the defendant, appealing, assigns for error that the court refused to sustain its demurrers to the evidence at the close of the plaintiff's case, and at the close of the entire testimony; that it admitted illegal evidence for the plaintiff and misdirected the jury as to the law.

It appeared by the plaintiff's own evidence that this stock was shipped upon a written contract contained on a printed form used by the defendant, and that this contract was signed by him before the cattle were loaded. The paper, a fac-simile of which is in the record, is headed in large print, "Instructions to agents and shippers." Among such instructions in plain legible type are the following: "For rules governing the passage of men in charge of live stock from the Missouri river to points on or east of the Mississippi river, see special instructions. Parties so passed must ride in the caboose attached to the train carrying the stock." It further appeared that the plaintiff had been a shipper of stock on this road for eight years; that he had during that time made five or six hundred shipments over the road; that he had in so doing signed similar contracts many times; that a caboose was attached to this train, and that the plaintiff knew this fact; that there was nothing preventing him from taking a seat in the caboose; that he was aware that a switch engine was liable to be attached to the train in Quincy; that all this transpired in broad daylight, and that, notwithstanding all these facts, the plaintiff continued sitting on top of the caboose, on a projection without railing or guard; his feet barely touching the roof of the caboose, without holding on to anything, and his face opposite to the approaching switch engine.

The court trying the case, if we can gather any intelligent theory from its subsequent instructions to the jury, seems to have refused the defendant's demurrer to the plaintiff's evidence, on the ground that, the plaintiff being a passenger, the accident was *prima facie* evidence of negligence on part of the defendant; that the printed instructions to agents and shippers, formed no part of the contract of transportation, because the real contract, although contained on the same page, was headed live-stock contract and separated from the instructions by a cross line; and that the plaintiff, against the objections of the defendant, was permitted to give evidence of a practice among shippers of stock not to ride all the time in the caboose, but, to use the phrase of plaintiff's witness, to catch on the train at any place, if the train moved before they could reach the caboose.

Touching the last of these propositions, we may say that, even if the evidence were admissible, it could have no bearing on the present controversy, as plaintiff's evidence concedes that he had ample time and opportunity to get into the caboose, if he had seen fit to do so. Touching the second proposition, we say that it is wholly immaterial whether the instruction to agents and shippers was formally part of the live-stock contract signed by the plaintiff or not. It was a reasonable regulation of the company, purporting, in express terms, to be directed to him as a shipper; of which, under the uncontroverted evidence, he was bound to take notice, and of which, unquestionably, under the facts of this case, he had actual notice. A passenger who is received on a freight train is entitled to the same rights as one on a passenger train, except that by so doing he acquiesces in the usual incidents and conduct of a freight train, managed by prudent and competent men. *McGee v. Railroad*, 92 Mo. 208. "It cannot be expected," says Judge THOMPSON, in his work on carriers, page

234, "that a company will provide its freight trains with all the conveniences and safeguards against danger which may properly be demanded of it in the construction and operation of cars designed solely for the transportation of passengers." That the *prima facie* presumption of negligence arises in these cases from the mere happening of the accident is a proposition not open to discussion. *Lemon v. Chanslor*, 68 Mo. 340; *Coudy v. Railroad*, 85 Mo. 79; *Hipsley v. Railroad*, 88 Mo. 348. But the passenger who seeks to recover on this presumption alone must show not only that he was a passenger, but, also, that, at the date of the accident, he was in a place where he had a right to be, or, at least, that the place where he was, if he was not in the right place, did not affect the result. It is the duty of a passenger, in getting on board of a car, to place himself in a safe position therein, if he is able to obtain such position, and it is no excuse for him to place himself in an unsafe one, that the persons in charge know that he is unsafe, and do not drive him therefrom, when the unsafety is equally well known to him. *Clark v. Railroad*, 36 N. Y. 135. The *prima facie* liability of the carrier, arising from the mere fact of the accident, is conditioned upon the exercise of reasonable care on the part of the passenger. *Railroad v. Jones*, 95 U. S. 439; *The Peoria, etc., Railroad v. Lane, Adm'x*, 83 Ill. 448. We concede, as claimed by plaintiff's counsel, that the presumption of due care obtains in favor of a plaintiff who seeks to recover damages for an injury sustained by him through the alleged negligence of another. This, however, is a presumption arising in the absence of positive evidence, and can be of no avail to a plaintiff whose own evidence shows a want of due care.

In the case at bar, the plaintiff's own evidence concedes that he knew that the place on top of the car was less safe than the place inside of it. That fact, indeed, seems to be so patent that a court is warranted to take

judicial notice of it without proof. Outside of the mere fact of the accident, there is nothing in plaintiff's evidence raising any presumption of negligence on part of the defendant. The fact of itself is insufficient, because his own evidence shows that he was not in the place set aside for passengers, and does not show, or tend to show, that the accident would have happened to him if he would have been in the proper place. The jar was the result of a concussion between the engine and caboose, while the former was about to be hitched to the latter in the usual course of the company's business, and there is nothing in the plaintiff's evidence tending to show that it was negligently done. We may add in this connection, although not necessary to the result arrived at, that the defendant, by numerous witnesses, proved that the coupling was done in the usual manner, that the engine was handled properly and with prudence, and that the impact was not sufficient to disturb anything inside of the caboose car.

On the other hand, if we look at the facts with a view of determining the plaintiff's contributory negligence, they are equally fatal to plaintiff's recovery. In *Harris v. Railroad*, 89 Mo. 233, the supreme court reversed a judgment in favor of plaintiff, on the sole ground that the trial court refused the following instruction asked by defendant:

"If the jury believe from the evidence that the plaintiff knew, or by the exercise of ordinary care could have known, that the train had stopped to do some switching, and by the exercise of ordinary care could have known that a part of the train was likely to be backed against the part to which the caboose was attached, and that some concussion and jar would likely be produced in the caboose, and that the plaintiff then, without thinking of the approach of the cars, and without paying any attention whether the cars were approaching or not, left his seat and stood up in the car, and was thrown down and injured, when he would not have been, had he

kept his seat, or resumed the same before the cars struck, then the plaintiff was guilty of such contributory negligence as bars his recovery, and the jury must find for the defendant.''

In that case the plaintiff testified that the concussion was more violent than he ever before experienced, though he had been in the habit of riding on trains for many years, and that it threw a person sitting in a chair on the ground, and threw the chair on top of him ; hence, there was some positive evidence of the company's negligence beyond the mere accident, which is wanting in the case at bar. Every fact, that is hypothetically put in the instruction above quoted, is established by the plaintiff's own evidence in the case at bar. As the uncontroverted facts fail to show any liability on part of defendant, the cause should not be remanded. All the judges concurring, the judgment is reversed.

THOMPSON, J. (*concurring*)—I concur in reversing the judgment in this case, though I am not clear that we should not remand the cause. I place my concurrence in the reversal on the ground that I see no evidence of negligence on the part of the defendant, and not on the ground that the record discloses contributory negligence on the part of the plaintiff. Undoubtedly the record raises a conclusive inference of contributory negligence on the part of the plaintiff, and shows that he was riding where he was when he received the hurt, in violation of a reasonable and known rule of the company, intended for his safety. But, under the latest decisions of the supreme court, if, notwithstanding his negligence in thus exposing himself to possible injury, the defendant's servants in charge of its switch engine saw his exposed position or might have seen it by the exercise of ordinary care, in time to have averted the injury by giving him warning, checking their speed and thus reducing the force of the impact or otherwise, and failed to do so, the defendant would be liable,—but

only on the condition that they were guilty of negligence in doing what they did. I do not find in the record any evidence that they were so guilty of negligence. I quite concur in the opinion of the court that the mere happening of the accident under the circumstances under which it took place was not of itself evidence of negligence. The record shows that the shock, which threw the plaintiff from the position where he was seated, was not unusual, and it indicates that the defendant's servants in charge of its switch engines proceeded in the matter of making the coupling in the ordinary and usual way. I do not gather anything from the evidence tending to the conclusion that, if they had observed the plaintiff in the position where he was seated, they would have been guilty of a want of ordinary or usual care in doing what they did. It does not appear that the slight shock which the caboose received from the switch engine would ordinarily throw a man down, seated as the plaintiff was. The case is entirely different from the case where a trespasser upon a railway track is run over and killed or injured. In such a case any contact between him and the engine must inevitably lead to his hurt. But here it did not at all follow as a question of probability that the plaintiff, in his situation, would be hurt by what the engineer was about to do.