AUFDENBERG v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant*.

### Division Two, March 3, 1896.

1. **Railroads:** CONDUCTOR, DUTIES AND POWERS OF: NEGLIGENCE: PASSENGER. The conductor of a railway train is supreme in authority on the train and may by force remove a passenger from a place not provided for him; but his failure to do so does not constitute negligence. A simple request is sufficient, and if the passenger is injured because of his failure to comply with it, the company will not be liable.

2. —— : —— : —— : ——. The order of a railway conductor to an adult passenger to occupy a place of obvious peril does not justify obedience on the part of the pasenger, and, if injury results from the latter's compliance with the order, the company will not be liable.

3. ——— : ——— : ——— : ——— . Railway passengers should ride in the places designated by the rules of the company and the conductor's consent that they may ride elsewhere will not render the company liable for resulting injury, especially where such consent permits the passenger to occupy a place of imminent peril.

4. Practice: INSTRUCTIONS. An instruction is properly refused where there is no evidence upon which to base it.

*Appeal from Cape Girardeau Circuit Court.*—HON. H. C. RILEY, Judge.

REVERSED.

ACTION for damages brought by plaintiff as the widow of Herman Aufdenberg, against defendant company for the death of her husband. The material portion of the petition is here copied:

"That, while Herman Aufdenburg was a passenger on defendant's train of cars on the ninth day of February, 1892, as aforesaid, he, with the knowledge and consent of defendant, through its servants, officers, agents, and employees managing and conducting and operating said steam locomotive and train of cars, left the passenger car in which he was then and there conveyed, and, with the consent and full knowledge and permission of defendant, he climbed upon the top of a box freight car, it being a part of defendant's mixed train of freight cars together with said passenger car, and the defendant, by and through its agents, servants, and employees as aforesaid, negligently and carelessly, unskillfully and with criminal intent, started said train of cars, well knowing deceased to be in his dangerous position upon the top of said box car, and continued to run said train along said branch railroad so that the deceased, without his fault, was suddenly and violently thrown from the top of said car onto the track of said railroad and under the cars and train by means and by reason of which the wheels of said cars and train ran

upon and over the body and limbs of the said Herman Aufdenberg, so that he was thereby injured, and from the injuries received as aforesaid did then and there die; which killing occurred near the trestle number 22, about ——— miles from the town of Gordonville on said branch railroad; that the defendant could have prevented such killing by the exercise of proper care after the deceased climbed upon the top of the said box car, and by and through its agents, officers, servants and employees, managing and conducting said train carelessly, negligently, and with criminal intent, failed and refused to prevent the killing of deceased. That the said injury, from which the said Herman Aufdenberg died, as aforesaid, resulted from and was occasioned by the negligence, unskillfulness, criminal intent, and default of the defendant by and through its officers, agents, servants, and employees, while running, conducting, managing, and operating the said steam locomotive and train of cars at the time and place, in the manner hereinbefore set out. *Wherefore,* etc."

The answer pleaded, first, a general denial, and further pleaded: "That plaintiff's husband, against the advice, direct admonition, and command of the conductor of the defendant's train at the time of said accident, negligenly, and in reckless disregard of his life, left the passenger coach in which he was riding as a passenger, and which was provided for the use of passengers, and climbed on top of a freight car, from which he fell and was killed. So the defendant charges that the death of plaintiff's husband was occasioned by his own negligence, and that this defendant is in no way responsible for the same." To this, plaintiff filed reply.

Told in brief, the substance of the evidence is this: Herman Aufdenberg, on the morning of February 9, 1892, bought at Gordonville a return trip ticket to Whitewater station on defendant's road. Aufdenberg

first took his seat in the passenger portion of the coach, which was used, by means of a partition therein, both as a passenger coach and as a baggage car. There was ample room in the passenger car, which was at the rear end of the train, and in front of it were some seventeen box cars and one coal car loaded with small coal. Aufdenberg had been in the habit of riding on these trains during a period of three years next before the accident.

The rules of the company forbade passengers to ride on the car platforms, on the engine, or in the baggage car. These rules were conspicuously posted in the passenger coach as required by law. As the train was leaving Allenville, Aufdenberg started to leave the baggage end of the passenger coach, and the conductor, Kelly, called him to come back; but notwithstanding he must have heard, he did not heed, but kept right on to the adjacent car which was loaded with fine coal for the mills, and there he sat down. Kelly followed him out to the coal car, and then tried to get him to come back, but he said, "No, I want to ride here." Kelly next noticed him when the train reached Dutchtown, where the train had come to a standstill. There Aufdenberger had left the coal car and gone on top of a box car, which was the third box car ahead of the coal car. At Dutchtown the train stopped about five minutes. Aufdenberg was then sitting still on the top of the box car.

While the train was stopping at Dutchtown, Kelly went up to Aufdenberg on the box car and tried to persuade him to go back to the coach, but he refused, saying, no, he wanted to ride there, and Kelly said to him, "Then hand me your ticket," which he did. When the train started from Dutchtown, Aufdenberg was still on top of the train, sitting with his feet hanging down in front end of the car, and on his left side

was the brake rod, and on the opposite side was a hand hold. Kelly staid there for a minute or two and then returned to the coach and never saw Aufdenberg after that alive. About two and a half miles from dutchtown, Aufdenberg fell off, and was run over by the cars and killed, and Kelly, judging from the indications on the wheels and trucks, judged that some ten or twelve cars passed over Aufdenberg's body, which would indicate that Aufdenberg, after Kelly left him, had gone forward some six or eight cars from where Kelly left him sitting on the box car.

John Luber, Sr., who lives halfway between Dutchtown and Gordonville, that is, at a point where it is two miles each way to either town, testified that on the ninth day of February, 1892, he saw Aufdenberg on top of one of the box cars lying down with his face toward witness; then just as the train came up close to witness, who was standing in his yard, Aufdenberg got up and walked forward *"pretty pert,"* toward the engine, several cars: The train was just then going down grade and though witness could see Aufdenberg, he could not see how many cars he passed over.

Luber's son, however, who was in the field with his father, but farther away as well as on higher ground, saw Aufdenberg walking on the cars, up toward the engine, and he says he saw Aufdenberg walk over two cars, when he fell down head foremost, and on the father and son going to the spot, they found Aufdenberg's remains. This testimony of Luber and son stands undisputed.

Something is said by counsel for plaintiff in their brief about Aufdenberg's *"condition"* intimating *intoxication*; but there is not a *scintilla* of testimony to that effect; the only witness interrogated on the subject,

Sebastian, a brakeman, says in reply to a question: *"I don't know if he was drunk or sober."*

Counsel also state that "the testimony of Dr. Miller shows that deceased told the conductor at Dutchtown he was *sick.*" Now Dr. Miller's deposition taken by *plaintiff* but read by *defendant*, shows that in a conversation with Aufdenberg, Kelly asked him "if he was *sick;* he, Aufdenberg, said no."

An instruction in the nature of a demurrer to the evidence was denied defendant, and the court at the instance of plaintiff gave the following instructions:

"1. The court instructs the jury that, if you should believe from the evidence that the train run and operated by the defendant on the Jackson Branch of the St. Louis, Iron Mountain & Southern Railway was a mixed train, used for the transportation of passengers, and for freight, it was the duty of defendant's conductor and employees to use the highest degree of care for the safety and protection of the passengers on said train, and if you should believe from the evidence that, on the ninth of February, 1892, Herman Aufdenberg was a passenger on said train, and during the trip from Allenville to Gordonville, he climbed upon the top of the freight car in said train, and the conductors or agents in charge of said train knew of his being there, it was their duty, and they had full power under the law, to cause him to come down, and if they failed to do so the defendant was guilty of negligence, and is liable in this suit.

"2. The court instructs the jury that, if you shall find from the evidence that the train upon which the deceased was riding was a mixed train used for the transportation of passengers and freight, that deceased had paid his fare as a passenger, and that, during the trip from Allenville to Gordonville, he was guilty of negligence in leaving the passenger coach and climbing

upon top of the freight cars of said train; yet, if you further find from the evidence that the conductor of said train discovered the position of deceased on top of said car a sufficient length of time before the accident to stop the train and cause the deceased to descend from said cars, and, instead of so doing, said conductor permitted said deceased to remain, and was afterward jerked or thrown from said cars and killed, defendant is liable, and you should find for the plaintiff.''

Two instructions, among others, were refused defendant, of which the following are specimens:

''3. The court instructs the jury that defendant's conductor had no right to consent that plaintiff's husband might ride on the top of defendant's freight cars, and, although the jury find that the conductor did so consent, yet the defendant is not liable.

''4. The court declares, as a matter of law, that, if plaintiff's husband walked forward on the top of the train of cars, while the same was in motion, and that, while so walking, he fell between the cars and was killed, then the jury are instructed that the defendant is not liable, and their verdict must be for the defendant.''

*Martin L. Clardy* and *R. Graham Frost* for appellant.

(1)   The court erred in refusing defendant's instructions 1 and 2 in the nature of demurrers to the evidence. *First.* Where there is no doubt as to the facts, nor as to the inference to be drawn from them, it is the duty of the court to apply the law, without submitting the question to the jury. *Barton v. Railroad*, 52 Mo. 253; *Carroll v. Railroad*, 107 Mo. 653; *Powell v. Railroad*, 76 Mo. 80. *Second.* Where the evidence fails to show any negligence on the part of

the defendant, the case should be taken from the jury. *Giffey v. Railroad*, 53 Mo. App. 462; *Smith v. Railroad*, 113 Mo. 70; *Hyde v. Railroad*, 110 Mo. 272. *Third.* Where the testimony for plaintiff, or the whole evidence in the case, clearly shows plaintiff's contributory negligence, a demurrer to the evidence should be sustained. *Harlan v. Railroad*, 65 Mo. 22; *Smitherman v. Railroad*, 29 Mo. App. 265; *Tuley v. Railroad*, 41 Mo. App. 432; *Weber v. Railroad*, 100 Mo. 194; *Elliott v. Railroad*, 150 U. S. 245; *Malcolm v. Railroad*, 44 Am. and Eng. R. R. Cases, 379; *Kirtley v. Railroad*, 65 Fed. Rep. 386. (2) The court erred in giving instructions for plaintiff, numbers 1 and 2. *First.* It was error to charge, without qualification, that defendant was bound toward plaintiff to the highest degree of care. *Harlan v. Railroad*, 65 Mo. 22; *Jackson v. Railroad*, 118 Mo. 199; *Bischoff v. Railroad*, 121 Mo. 217; *Smith v. Railroad*, 108 Mo. 249; *Daugherty v. Railroad*, 97 Mo. 647; *Berry v. Railroad*, 124 Mo. 223. *Second.* These instructions did not present to the jury the defense of contributory negligence, nor are they aided in this respect by the other instruction. *Daugherty v. Railroad*, 97 Mo. 667; *Higgins v. Railroad*, 36 Mo. 418; *Railroad v. Hirst*, 52 Am. and Eng. R. R. Cases, 409; cases cited under point 1; *Fisher v. Railroad*, 58 Am. and Eng. R. R. Cases, 337; 2 Wood's R'y Law, sec. 303, p. 1103, sec. 304, p. 1109. (3) Instruction 3 for plaintiff, even if correct in the abstract, was not applicable to the case. It omits, also, the question of contributory negligence. See cases cited, *supra.* (4) The court erred in refusing defendant's instructions numbers 4, 5, and 6. These instructions present the defense of contributory negligence and should have been given. See cases cited, *supra.* The court erred in overruling defendant's objection to the introduction of any evidence under the pleadings in this case. See

cases cited, *supra*. (5) Having gone on top of a freight car against the remonstrance of the conductor, and having remained there after being urgently requested to return to the passenger coach, the deceased was guilty of such contributory negligence as will preclude any recovery. *Tuley v. Railroad*, 41 Mo. App. 432; *Elliott v. Railroad*, 150 U. S. 245; *Worthington v. Railroad*, 52 Am. and Eng. R. R. Cases, 384; *Railroad v. Jones*, 95 U. S. 439; *Higgins v. Railroad*, 36 Mo. 418; *Railroad v. Langdon*, 1 Am. and Eng. R. R. Cases, 87; 2 Wood's R'y Law, sec. 303, p. 1103; 2 Wood's R'y Law, sec. 304, p. 1109; Hutchinson on Carriers, sec. 665, pp. 524, 525.

*Wilson Cramer* and *Wilson & Hines* for respondent.

(1) The question of the negligence of defendant and the contributory negligence of the deceased was properly presented to the jury under the instructions given for plaintiff and defendant. (2) The jury having found that the accident which caused the death of deceased was caused by the negligence of defendant, and as there is testimony to support their finding, it should not be disturbed. (3) The defendant owed the deceased the same measure of care as it would have owed him had he been a passenger upon one of its regular passenger trains—that is, the highest degree of care—the safety of human life while being conveyed by such dangerous agencies requiring it. (4) Even though deceased voluntarily placed himself in a dangerous position, yet, upon discovering his peril, the defendant should have compelled him to come down into the coach while the train was standing at Dutchtown. It was gross negligence to permit a passenger, sick or well, to ride on top of a freight car. The defendant owed the deceased the duty to not wantonly

take his life. *Meyers v. Railroad*, 59 Mo. 23; *Swigert v. Railroad*, 75 Mo. 477; *Donahoe v. Railroad*, 83 Mo. 554; *Zimmerman v. Railroad*, 71 Mo. 484. (5) Taking up the deceased's ticket while he was on top of the freight car was a virtual permission to him by the defendant's conductor to ride in a dangerous place. (6) The conductor of defendant's train had full power and authority under the law to compel the deceased to come down into the coach, or to get off the train. (7) If deceased did walk forward upon the top of the cars after the train left Dutchtown, this the conductor should have known he would do from his conduct before the train arrived at that station. It must have been evident to the conductor that the deceased was *non compos*, either from sickness or some other cause. The jury may have believed that he did not so walk; they were the judges of that matter; and had the conductor discharged his full measure of duty toward his passenger at Dutchtown, no opportunity would have been afforded deceased to walk forward after the train proceeded from that station. (8) The contributory negligence of deceased ceased to be an active or proximate, and became a remote, cause of the injury upon the discovery of his danger by defendant's officers. They possessed the power and ability to avert the impending danger, and to render the contributory negligence of deceased harmless. It was their duty to do so, and for their failure, the defendant should respond in damages. *Bell v. Railroad*, 86 Mo. 609; *Donahoe v. Railroad*, 91 Mo. 365; *Werner v. Railroad*, 81 Mo. 373; *Scoville v. Railroad*, 81 Mo. 440; *Hilz v. Railroad*, 101 Mo. 54; *Warmington v. Railroad*, 46 Mo. App. 323; *Carroll v. Railroad*, 107 Mo. 662; *Whitehead v. Railroad*, 99 Mo. 269.

SHERWOOD, J.—"The conductor is regarded as supreme in authority on the train, as if a captain on board ship, and his acts * * * are the acts of the company." 2 Rorer, Railroads, p. 964. Although this is true, and although it is true also as a corollary of that that the conductor in this case might have removed Aufdenberg *by force* from his seat on top of the box car, yet it by no means follows that it was negligence in any sense for the conductor to fail to remove Aufdenberg in the manner suggested. A simple request was sufficient, and a peremptory order unnecessary. This was the view taken by the members of this division in *Berry's* case, 124 Mo. *loc cit.* 338, 339 *et seq.*, and cases cited, and we still retain the same view of the law on the point that we did then. There is no adjudication to the contrary.

Besides, the conductor states that Aufdenberg's position when seated on top of the box car, was comparatively a safe one, and that it would have been almost impossible for Aufdenberg to have fallen if he had not gotten up; and the testimony clearly shows that he did not fall from his seat, but fell while walking on top of the box cars toward the engine, while the train was running from twelve to fifteen miles per hour.

It is entirely unnecessary for us to say at this time what would have been the conductor's duty had Aufdenberg been drunk, as there is not a particle of testimony to that effect; and while intoxication, if it went to a certain extreme, might tend to rob a man of his discretion, yet certainly this would not be the result of his mere sickness; but on this point, as already stated, the deposition of Dr. Miller taken by plaintiff shows that Aufdenberg was not sick.

Not only was the conductor not bound to use force to compel Aufdenberg to come down from the box car

and come within the passenger coach, but even if he had ordered him to ascend the box car and to ride or walk thereon, such a command would have been no excuse to Aufdenberg and cast no liability on the defendant company had such a command been obeyed. Where the danger is plainly open to observation, an adult passenger will not be justified in yielding obedience to an order which can not be obeyed without the incurrence of manifest peril. *Railroad v. Pinchin*, 31 Am. and Eng. R. R. Cases, *loc. cit.* 431; *Railroad v. Carper, Ibid.* 36; *Railroad v. Jones*, 95 U. S. 439.

In the case last cited, SWAYNE, J., said: "The plaintiff had been warned against riding on the pilot, and forbidden to do so. It was next to the cow-catcher. and obviously a place of peril, especially in case of collision. There was room for him in the box car. He should have taken his place there. He could have gone into the box car in as little, if not less, time than it took to climb to the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cow-catcher, or put himself on the track before the advancing wheels of the locomotive. The company, though bound to a high degree of care, did not insure his safety. He was not an infant nor *non compos*. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter, the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped also if he had been there. His injury was due to his own recklessness and folly. He was himself the

author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit.''

In *Clark v. Railroad*, 36 N. Y. 135, it was held *prima facie* negligence for a passenger to ride on the *steps* of a horse car, and it was laid down as a principle of law that, when it appears that a passenger is riding upon a car in a place of *danger*, his negligence is *prima facie* proved, and that the *onus* is on him to rebut the presumption.

In *Railroad v. Bisch*, 41 Am. and Eng. R. R. Cases, 89, ELLIOTT, C. J., said: "One of the instructions given by the court reads thus: 'Even if the jury find from the evidence that the plaintiff had been warned against standing on the platform, and had been directed to go inside, and had disobeyed the instruction, still, if the jury also believe from the evidence that the conductor of the train, at the moment of giving the signal to start, actually saw the plaintiff on the rear platform of the caboose,   *   *   *   and knew that he was in a dangerous position, and gave the signal to start while the plaintiff was in that position, and without giving him a reasonable time to enter, and that by a sudden jerk in starting the cars the plaintiff was thrown to the ground and injured, then the jury should find for the plaintiff.' This instruction can not be rescued from condemnation. Leaving out of consideration minor matters of objection, and placing our decision upon broad grounds, we adjudge that the instruction is so radically wrong as to compel a reversal of the judgment. The plaintiff by refusing obedience to the directions given him, and by voluntarily remaining in a place of danger after warning, assumed the risk of injury. The case, as it appears in the hypothesis on which the instruction proceeds, is a stronger

one than the ordinary case of contributory negligence; for the plaintiff did more than carelessly seek and remain in a place of danger, for he remained there in disobedience of directions given him, and despite the warnings which he received. He in fact assented to the injury. The case goes beyond the operation of the rule on the subject of contributory negligence, and comes within the scope of the maxim, *volenti non fit injuria.* * * * One who is himself guilty of a breach of duty, and wrongfully remains in a place of danger, can not recover if that wrong was the proximate cause of his injury, although another may have also been in fault. To authorize a recovery the case must be one 'of unmixed negligence.' This case strikingly illustrates this rule, for had the plaintiff entered the car, as it was his duty to do, the injury would not have befallen him. Clearly, then, his own wrong was the proximate cause of his misfortune. * * * Not only did the plaintiff, upon the theory on which the instruction is constructed, disobey a direction given him, but he remained in a place of danger where he ought not to have remained, even if he had not been warned and directed to leave it.''

The author of a work of recognized merit says: ''Grown persons must be permitted to exercise their discretion, in a great measure, as to the positions they will occupy upon the carrier's conveyance, and to take upon themselves the risk of many dangers by their negligent conduct, if they choose so to do, with full knowledge of the probable consequences, and no obligation rests upon the carrier to remonstrate or to forbid it.'' Hutchinson Carriers [2 Ed.], sec. 665. To the like effects see 2 Wood Railroads, secs. 303, 304; *Higgins v. Railroad,* 36 Mo. 418; *Tuley v. Railroad,* 41 Mo. App. 432; *Railroad v. Langdon,* 1 Am. and Eng. R. R. Cases, 87.

The foregoing reasons and authorities unquali-

fiedly condemn the instructions aforesaid, given at the instance of plaintiff, and conspicuously mark the error of the refusal of the fourth instruction asked by defendant.

As to defendant's third instruction, it was properly refused on the ground that there was no evidence to show *consent* on the part of the conductor. If there had been such evidence, then the instruction would have been properly asked and improperly refused. Passengers are expected to ride in the places designated by the rules of the company, and a conductor can not consent to their doing otherwise, especially where such consent permits the passenger to go to such places of imminent peril, as this record discloses Aufdenberg went.

In conclusion, and as a necessary result of remarks heretofore made, the instruction in the nature of a demurrer to the evidence should have been given. The judgment should therefore be reversed, and as plaintff has no cause of action, we will not remand the cause, but direct judgment for defendant to be entered in this court. All concur.