HOUCK, by His Next Friend, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1906.

1. **PRACTICE: Instruction: Abstract Proposition: Issue Without Evidence.** An instruction which states a proposition of law upon an issue raised by the pleadings but not supported by the evidence, though it does not authorize a verdict, is nevertheless prejudicial error.

2. **NEGLIGENCE: Unguarded Machinery: Enticing Children.** The rule that makes the owner of machinery liable for injuries inflicted by it upon children, where it is dangerous, attractive to children and left unguarded, does not apply to pumping machinery remote from any dwelling-house and placed in a house upon premises where posted notices and personal warnings were given to keep trespassers out.

3. ——: ——: ——. In an action by a child for injuries received by such machinery, where the plaintiff testified that he did not approach the machine on account of curiosity or interest in it, but for another reason, he could not recover on the ground that attractive and dangerous machinery was left unguarded and for that reason caused the injury.

4. ———: **Principal and Agent: Authority of Agent: Trespasser.** An engineer in charge of machinery and charged with the duty of keeping people and especially children out of the room where it was, was clothed with apparent authority to invite people into the room, and a child who entered on his invitation was not a trespasser.

5. ———: **Unsafe Premises: Ordinary Care.** It was the duty of the engineer under such circumstances, if he invited the child to enter the room where the machinery was unguarded, to observe care for the child's safety proportionate to the danger.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED.

*Scarritt, Griffith & Jones* for appellant.

(1) Whether plaintiff went into the pump house at the time in question on the request of defendant's employee Kenealy, in order to assist him, as charged in the petition, or wholly upon his own volition for his own pleasure, plaintiff under the evidence has no case against defendant company. In order to make an employer liable for the negligent act of its servant it must be affirmatively shown that in doing the negligent act complained of the servant was at the time acting within the scope of his authority and employment. Sherman v. Railroad Co., 72 Mo. 62; Mangan v. Foley, 33 Mo. App. 250; Snyder v. Railroad Co., 60 Mo. 413; Stringer v. Railway Co., 96 Mo. 302, 9 S. W. 905; Flower v. Penn. Ry. Co., 69 Pa. St. 210; Everhart v. Railroad Co., 78 Ind. 292; Railroad Co. v. Harrison, 48 Miss. 112; Church v. Railway Co., 50 Minn. 218; Railway Co. v. Lindley, 42 Kas. 714; 3 Elliott on Railroads, sec. 1305. (2) It was not shown that the machinery in question was such as to be particularly attractive to children or other persons. On the contrary, the evidence shows that the odor of escaping gasoline gas made it particularly offensive to be in the house where the machinery was, especially in hot

weather. Boys had not been in the habit of being in and about the pump house, although boys and men sometimes tried to fish on the other side of the lake from the pump house. It is not charged in the petition that defendant company maintained this pond or lake, nor does plaintiff seek to hold defendant company by reason of the attractiveness of this pond. In fact, it appears that plaintiff did not go down to defendant's premises by reason of being attracted by either the machinery or the pond, but went along with Kenealy's daughter, to take Mr. Kenealy's dinner to him. McAtee v. Valandingham, 75 Mo. App. 45; Marr v. Bunker, 92 Mo. App. 651. (3) It is error to give an instruction that is merely an abstract statement of law, especially where neither that instruction nor any other applies that principle to the facts of the case. Young v. Railway, 79 Mo. 336; Railroad v. Railroad, 118 Mo. 599, 24 S. W. 478. (4) Plaintiff's third instruction is erroneous in that defendant company is made liable for the negligence, if any, of its employee, Kenealy, in requesting plaintiff to go into the pump house to assist him, regardless of the fact that it was shown that Kenealy had no right or authority to employ this boy or any one else to assist him there. Mangan v. Foley, 33 Mo. App. 250; Chandler v. Gas Co., 174 Mo. 321, 73 S. W. 502. (5) In plaintiff's instruction numbered 4, it is assumed that plaintiff was himself guilty of contributory negligence and that he was a trespasser at the time of his accident. It was, therefore, error to instruct the jury that defendant was liable to plaintiff under such circumstances for anything except willful or wanton conduct on the part of its employee. There was no evidence of any willfulness or wantonness on the part of defendant's employee. The court so instructed the jury. Neither was willfulness nor wantonness pleaded. That defendant owed plaintiff, as a trespasser, no duty except not to willfully or wantonly injure him, is too well established to admit of discussion. Wencker

v. Railroad, 169 Mo. 592, 70 S. W. 145; Witt v. Stifel, 126
Mo. 303, 28 S. W. 891; Barney v. Railroad, 126 Mo. 372,
28 S. W. 1069.

*Allen Stallings* and *P. H. Cullen* for respondent.

(1)   The undisputed evidence shows that Kenealy
was the servant of the defendant and had charge and con-
trol of the grounds and machinery.   He had the right to
say who should come on the premises.   He had the right
to admit or to deny admission.   If he had ejected this
child he would have been doing the master's business.
Canfield v. Railroad, 59 Mo. App. 363.   And the fact that
he admitted plaintiff and directly enticed him into the
dangerous place, shows that he was still acting within
the scope of his authority, but violating his master's in-
structions; in other words, negligently failing to do his
duty.   Knowles v. Bullene, 71 Mo. App. 347; Siegrest v.
Arnot, 10 Mo. App. 200; Garretson v. Dueulckel, 50 Mo.
104; Snyder v. Railroad, 60 Mo. 413.   (2)   One is under
no duty to a trespasser to keep his premises safe, though
the latter is an infant; but he is under such obligation
to one, who is expressly or impliedly induced or allured
to go thereon.   Crogan v. Schiele, 1 Atl. 899; Toomey v.
Sanborn (Mass.), 14 N. E. 921.   And he cannot place
any dangerous thing unguarded so near the public way
as to endanger persons thereon without liability to per-
son injured thereby.   City of Indianapolis v. Emmelman
(Ind.), 9 N. E. 155; Khron v. Brock (Mass), 11 N. E.
748.   Nor keep it unguarded on his premises if it is likely
to attract children or with the knowledge that children
are in the habit of resorting to it.   Railway v. Styron
(Tex.), 1 S. W. 161; Powers v. Harlow (Mich.), 19 N.
W. 257; Dublin Cotton Oil Co. v. Jarrard, 40 S. W. 531;
Fink v. Missouri Furnace Co., 10 Mo. App. 61; Porter
v. Brewing Association, 24 Mo. App. 1; Leeright v. Ah-
rens, 60 Mo. App. 118; Schmidt v. Distilling Co., 90 Mo.
284, 1 S. W. 865, 2 S. W. 417; Kelly v. Parker Washing-

ton Co., 107 Mo. App. 490, 494, 81 S. W. 631; Nagle v. Railway, 75 Mo. 653; Railway Co. v. Simpson, 60 Tex. 106; Fink v. Missouri Furnace Co., 10 Mo. App. 61.

GOODE, J.—Action founded on a personal injury. The appellant company maintains a large tank near its depot in the town of Mexico, Missouri, whence its locomotives take water. About one and one-half miles from the depot is a pond which supplies water to the tank. This pond is immediately south of defendant's right of way. Between twenty and thirty feet west of it are an engine and pump used to force the water through pipes into the tank at the depot. The engine and pump are inclosed in a frame house twenty feet square of two rooms, and the evidence goes to show there is an entrance to each room, one on the west and one on the south side of the house. The access to this house from the railroad and the public road was quite inconvenient. It was fenced except on the side next to the right of way, but there was a narrow opening between a post of the fence and a bridge abutment which a person could get through. This opening was two hundred feet from the pump house. To get to the house from the railroad, it is necessary to go down a high dump. The motive power of the engine is gasoline and a part of the contrivance is a cylinder in which the gasoline is exploded. A flywheel connected with the engine is near the northwest corner of the room, and a metal shaft two and one-half inches in diameter and five or six feet long, ran from the engine to near the east side of the room. By means of a cog at its east end which worked into another cog attached to a perpendicular shaft, the horizontal shaft transferred the power from the engine to the perpendicular shaft which ran below the floor, and, as we understand, operated the pump. The horizontal shaft ran east and west within four or five feet of the south wall of the building and the space between it and the wall was vacant. The house is about a quarter of a mile from the city limits and the

same distance from the nearest residence. Grown people and children skated on the pond in winter and sometimes fished in it in summer, but did so against the will of the railway company. An employee of the appellant by the name of Kenealy was in charge of the engine house and pumping machinery. Signs were posted about the premises warning persons not to trespass. Respondent got hurt in the engine house on June 14, 1904. He was at the time nine or ten years old. As he was walking along the vacant space between the horizontal shaft and the south side of the room, his coat or jacket caught on a set-screw in the shaft and the revolution of the shaft broke his arm. The boy was visiting that day at the home of Mr. Kenealy where he was in the habit of going to play with Kenealy's children. At noon, Mrs. Kenealy prepared her husband's dinner and gave it to her daughter, Hannah, or to her daughter and respondent, to take to him. Respondent swore that he carried the dinner and Hannah some drinking water, and that it was not uncommon for him to go along when Kenealy's dinner was taken to him. Kenealy was sitting under a clump of trees fifty or sixty feet from the engine house talking to some section hands, when the children arrived. They gave him his dinner and then respondent began to fish in the pond not far from the pump house. Thus far the testimony is in accord, but at this point it diverges. Respondent testified that while he was fishing, he noticed that the engine had stopped and carried the information to Kenealy, who arose and started to the engine house, remarking to the respondent as he went into the door, "Turn the wheel" meaning as we understand, the flywheel of the machinery. Respondent turned the wheel and at the same time Kenealy started the engine by reaching for and moving a lever which controlled its operation. As Kenealy did this, the respondent was going out of the room and as he went out, his jacket caught in the manner we have stated, resulting in the injury to his arm. Kenealy testified that when his dinner was given

to him, he told the boy, as he had done before, to stay away from the grounds, at the same time giving his daughter the dinner pail and telling her to go home; that she and the boy started away together and got out of sight and Kenealy did not see the boy any more until about the time the accident happened. He said that when he started the children homeward, he noticed the engine had stopped and went into the engine room to start it; that as he did so, respondent came running in and asked to help, was threatened against remaining on the premises, told to go out and did so. Kenealy then started the engine, and immediatly an exclamation from the respondent attracted his attention and he saw that respondent was caught on the shaft. The movement of the machinery was stopped at once. Respondent admitted that he had been warned previously not to come about the engine house. The assignments of negligence are: first, that the defendant kept in the pumping house attractive and dangerous machinery, engines and appliances calculated to excite the curiosity of children and to attract them to go near and use it, and defendant knew children were in danger of being attracted by the machinery unless it was carefully guarded, and on the day of the injury it was left unguarded; second, that knowing respondent's immature age, the defendant, its agents and servants negligently employed, directed and invited him to carry to Kenealy his midday meal and carelessly induced and invited respondent to enter the premises wherein were the dangerous engine and machinery; third, that for a long time prior to the day of the injury, respondent had been going on the premises by the direction and invitation of defendant and its servants, and by their direction and invitation had assisted them in the discharge of their master's business; that on the day of the injury he was carelessly directed by the servant of the defendant in charge of the pumping house and engine, to watch the engine which was then in operation and notify said servant if it stopped; that he did

watch the engine and notify the servant when it stopped, and thereupon said servant negligently requested, invited and permitted the plaintiff to enter the engine house and remain in a narrow passway between the machinery and the walls, and while the plaintiff was there, the defendant's servant carelessly started said engine and machinery and carelessly directed and permitted defendant to assist in starting same; that when said machinery started, plaintiff was in an imminently perilous situation if the machinery moved, as the defendant's servant knew or could have known by ordinary care; and that with such knowledge or means of knowledge, defendant's servant carelessly and negligently started the engine and plaintiff was hurt; fourth, that the servants of the defendant in charge of the pumping house machinery were careless and negligent men as the defendant knew, or by ordinary care could have known, and defendant was guilty of negligence in having such men in its employ. We may dismiss, without consideration, the averment of carelessness in directing respondent to take Kenealy's dinner to him, for whatever negligence could be predicated of this simple direction, it was in no sense the proximate cause of the accident. We may likewise dismiss the allegation of negligence on the part of the defendant in having incompetent servants in charge of the pumping machinery, because it was supported by no proof. Kenealy was the only servant in charge, and nothing to impugn his competency was shown. Negligence, in those two particulars, was not carried into the instructions.

In two of the instructions given for the respondent, the court noticed, as though it bore on the case, the rule of law against leaving dangerous machinery unguarded in a spot where children are likely, from their natural impulses, to play with it, or otherwise expose themselves to injury from its movements. In one of those instructions, the jury was told that if the owner or occupant of grounds creates and maintains thereon something espec-

ially attractive to children and apt to injure them, he is negligent if he fails to properly guard it. That proposition was stated abstractly, without any attempt to apply it to the facts in the present case. The jury was not directed to give a verdict on a finding that the defendant had been guilty of keeping the pumping machinery unguarded where children frequented.

In the fourth instruction for the respondent, the same proposition was again alluded to in a negative way, but not as a basis for a verdict in respondent's favor. The condition on which the jury was directed by that instruction to give a verdict for the respondent, was a finding that Kenealy carelessly started the engine when he knew respondent was in a position to be caught and injured by the machinery. It allowed a recovery although the jury believed respondent had been guilty himself of contributory negligence in going into the engine house without permission, if the engineer, by ordinary care, could have avoided hurting him after he was seen to be exposed to danger.

Though a verdict was not authorized on the theory that the accident was due to carelessness in leaving a machine where children were apt to be hurt by it, the court refused to take that theory out of the case by instructing, as defendant requested, that there was no testimony to show it had been guilty of that sort of negligence. We think prejudical error was committed in bringing the subject before the jury. Probably that doctrine is sound if cautiously applied; but in the present case, every fact essential to its application is lacking. The machinery had not been left unattended, but, when the accident occurred, and constantly, so far as appears, was in charge of a competent engineer. It was remote from any residence, and was inclosed in a building so that there was no access to it except through the doorways; which, of course, defendant company was not required to keep fastened during a summer day. Children came about the pond and the precincts of the engine house, but this

was against posted warnings of the company and personal warnings given by the engineer. There is no proof that a child had ever entered the engine house before the occasion on which this boy was hurt. They had been driven away from the precincts incessantly. The machinery was not of a kind likely to be tampered with by children in a spirit of play; though, any machinery will attract, now and then, the curious gaze of children as well as grown persons. The respondent himself testified to having been warned away several times by the engineer, and other witnesses swore he had been told two or three times times that day to leave the premises. The leading decisions on the responsibility of the owners of dangerous machinery for injuries inflicted on children in consequence of the machinery being left where they were attracted by it, are the "turn-table" cases. [Stout v. R. Co., 17 Wallace 657; Koons v. R. Co., 65 Mo. 592; Nagel v. R. Co., 75 Mo. 653.] It would be inaccurate to say the rule has been confined to injuries done by that particular machine; but the courts incline to extend the principal of the "turn-table" cases no further than the precedents require. In truth, difficulty has been experienced in stating a principle for those decisions which can be reconciled with the proposition that the owner of premises is not responsible for injuries to trespassers on them, received in consequence of the condition of the premises, when there is no carelessness or willful misconduct by the owner. We think the controlling circumstance is the extent to which the machinery is likely, from its construction and situation, to attract children, together with the dangerous character of the appliance. According to the rule in analogous matters, it would be for the jury to say whether the attractiveness and danger were so great as to lay an owner liable if an injury occurred; but the cases show that the courts have exercised much control over this question. Various authorities supporting it were considered in Witte v. Stifel, 126 Mo. 295, 28 S. W. 891, and Barney v. R. Co., 126 Mo.

372, 28 S. W. 1069. In those opinions the general rule of law regarding liability for injuries to trespassers was contrasted with the exception allowed in instances where children are enticed into peril by attractive machinery placed where they are wont to play, and an attempt made to mark the distinction between the two doctrines. The court said the "turn-table" cases and others like them had reached the limit of liability; that in all of them a dangerous object had been left exposed and unattended in a place of common resort for children and those were the facts on which a recovery was allowed. [Witte v. Stifel, loc. cit. 302.] In the present case, as said already, the pumping machinery was not in any just sense exposed, had not been *left unattended,* and was not in an open place frequented by children and where they had free access to it, but in a building. The machinery was not shown to be of a character which especially enticed children into meddling with it. In view of those facts, we feel certain that the rule of decision adopted in the "turn-table" cases should not be applied to this one. It has no application for another reason. The only witness who testified for the respondent regarding the facts of the accident was himself; and his testimony excludes the conclusion that he was enticed into the engine house by the machinery. He swore unequivocally that he went because the engineer requested his help in starting the machinery. The testimony of the respondent and of all the witnesses shows that instead of the machinery, from its attractiveness to children, inducing respondent to enter the engine room, the fishing had attracted him and he had paid no attention to the engine until it stopped. When this happened, he followed the engineer inside; either because he was asked to help, as he swore, or because he was moved by a desire to see the engineer start the engine, not by a childish propensity to play with dangerous machinery. Inasmuch as respondent admitted he had been warned to keep out, we hold that if he entered the room on his

own motion, and not on the invitation of the engineer, he was a trespasser in a room where the defendant's servant had no reason to anticipate his presence, and the measure of duty to him was not carelessly to injure him after his presence was known. [Schmidt v. Distilling Co., 90 Mo. 284, 1 S. W. 865, 2 S. W. 417; Arnold v. St. Louis, 152 Mo. 173, 53 S. W. 900; Smith v. Dold Packing Co., 82 Mo. App. 9.] The cases just cited greatly resemble this one as to the point in hand, we think are not distinguishable in principle from it, and furnish us with the true rule of decision. The court should have eliminated from the consideration of the jury, the issue of appellant's negligence in keeping attractive machinery in an unguarded state where children were likely to be inveigled into playing with it.

It is insisted by the appellant that, even though its servant in charge of the pumping engine requested the respondent to help him to start the machinery, defendant is not answerable, for the reason that the invitation was beyond the scope of the engineer's authority. In support of this proposition, we are cited to several decisions of this State and some from other states. [Snyder v. R. Co., 60 Mo. 413; Sherman v. R. Co., 72 Mo. 62; Mangan v. Foley, 33 Mo. App. 250; Flower v. R. Co., 69 Pa. St. 216; Everhart v. R. Co., 78 Ind. 292; R. Co. v. Lindley 42 Kan. 714; R. Co. v. Harrison, 48 Miss. 112; Church v. R. Co., 50 Minn. 218.] Those cases maintain the doctrine that a master is not answerable for a negligent or willful tort of his servant unless the act is done in the general scope of the servant's employment; and, without doubt, this is sound law. As to whether the applications of it in all instances have been just, there is doubt; and in truth, the decisions on the subject are irreconcilable. Much injustice is done nowadays in applying the doctrine of respondeat superior; sometimes by unduly curtailing its application, but in the vast majority of instances by unduly extending it. A master is liable for the tort of his servant committed in direct dis-

obedience of his orders, if the tort occurs about something in the scope of the servant's duty. [Garretzon v. Duenckel, 50 Mo. 104; Snyder v. R. Co., supra.] The problem always is to say whether the particular tortious act of the servant was done in connection with some duty intrusted to him or independently of his duties. If plaintiff's entering the engine room induced the accident, we are unwilling to concede that the defendant is without responsibility for the resultant injury. It was one of the engineer's duties to keep people, especially children, out of the room and away from the machinery, and he swore that he was in the habit of performing this duty. Now, if he was intrusted with the power to deny them admittance, it seems to us that it would be a fallacy to say he acted beyond his apparent authority when he asked a child to enter. Grown people assume that a man clothed with authority to exclude them from a place, may, if he chooses, grant them admission. We hold that the engineer acted within what at least appeared to be his duty, if he invited the respondent into the room. This matter is argued by the appellant's counsel in a manner which we conceive not to be exactly pertinent to the facts. The non-liability of the defendant, is put on the ground that Kenealy had no authority to employ help in connection with running the engine, and it is said that when he asked the boy to help him, he did what was beyond his right. But asking the boy to help him is not the essence of the inquiry. Respondent was not injured in turning the wheel; which, he said, was the act Kenealy asked him to do. He had turned the wheel without injury and was on his way out of the room when his coat caught on the shaft. The important fact is that Kenealy's request was equivalent to an invitation or direction to the respondent to go where there was danger and the invitation prevented him from being a trespasser and entitled him to the care to avoid injuring him which would have been due to any other person there of right. This much, at least, can be said, notwith-

standing the decisions of the Supreme Court in the Snyder and Sherman cases, supra.

But this matter must be considered from another point of view. It cannot be said with certainty that entering the room was the proximate cause of the accident. It rather looks like the accident was due, either to some imprudence of the boy after he got in the room, or to carelessness on the part of Kenealy while he was in there, or to both causes. If Kenealy invited him into the room, he knew he was exposed to danger, and was under the legal duty of observing care for the boy's safety, proportionate to the danger. The vital questions in the case are whether he used proper care under the circumstances to prevent injury to the boy, and whether the boy himself, his age considered, was guilty of contributory negligence. The cause should be treated, we think, in accordance with the views expressed in this opinion and that it may be, the judgment is reversed and the cause remanded. *Bland, P. J.*, and *Nortoni, J.*, concur.