# OCTOBER, 1939.

RAY ASHBY, RESPONDENT, v. ILLINOIS TERMINAL RAILROAD COMPANY, A CORPORATION, APPELLANT.—132 S. W. (2d) 1076.

St. Louis Court of Appeals. Opinion filed November 7, 1939.
Motion for rehearing denied November 21, 1939.
Writ of certiorari quashed November 9, 1940.

*Frederick W. McCoy* and *Moser, Marsalek & Dearing* for respondent.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for appellant.

HUGHES, P. J.—This is an action for damages for personal injuries sustained by plaintiff as the result of being struck by one of defendant's cars near the station of defendant on its elevated track at North Market Street and Broadway in the City of St. Louis on the twenty-first day of January, 1937. Upon trial to a jury plaintiff obtained a verdict in the sum of $7500. Judgment was rendered in accordance with the verdict, and defendant appeals to this court.

The defendant maintains parallel tracks on North Market Street elevated above the street; the north track being used for westbound cars and the south track for eastbound cars. Over the intersection of North Market Street and Broadway the top of the concrete viaduct, on which the tracks were laid, is enclosed and the spaces between the rails and tracks filled with concrete and rock to prevent debris or objects falling to the street below. On the north and south side of North Market Street, and beginning about thirty-seven feet west of the west side of the concrete viaduct over the intersection are platforms alongside the tracks and somewhat higher than the tracks for the use of passengers getting on or off defendants' cars. There is no connection between these platforms, the space between the tracks being open. The north platform is for the use of passengers using defendants' westbound cars, and the south platform for those using the eastbound cars, the entrance being from the street by separate stairways. The plaintiff had ridden the defendants' cars before, but from another station and had never before been in the

North Market Street station, and did not know that there was a separate stairway leading to the north and south platforms. On the day of his injuries he was intending to take one of defendants' eastbound cars. He went up the stairs that were on the north side of the track which placed him on the north platform which was for the use of westbound cars. He immediately discovered that he was on the wrong platform, and he saw the eastbound car which he wanted to take standing alongside the platform on the south side. The plaintiff testifies that he stepped down from the north platform to a plank alongside the north rail of the track and motioned to the motorman on defendants' car and pointed to the east, and that the motorman nodded his head and pointed toward the viaduct and motioned his finger in that direction. There is no evidence that the motorman again actually saw plaintiff before he was struck by the car. But plaintiff says he proceeded east a distance of about thirty-seven feet to the concrete viaduct; crossed over the viaduct to defendants' eastbound track, and turned facing the car at the platform and walked towards it, in order to reach the south platform and board the car, and the motorman was all this while looking to the south and did not see him. When plaintiff was within about fifteen feet of the front end of the car, the car suddenly started forward striking him and throwing him from the track so that he fell to the street below and received the injuries complained of.

The motorman testifies that he never saw plaintiff at any time on the north platform or near thereto, and that he never signaled or motioned or nodded his head to him, but was at all times facing the south and watching passengers getting on and off the car; and when all the passengers had boarded the car and while looking at the car doors to the south he started the car, and then looked forward and saw plaintiff in the middle of the track about four feet ahead of the car, whereupon he applied the brakes and stopped as quickly as he could.

Defendant's evidence shows that over the stairway entrance to the north platform in large letters are the words "TO ST. LOUIS," and between the tracks and in plain view from the north platform is a sign in large letters with the words "YOU ARE FORBIDDEN TO CROSS THESE TRACKS;" and at the east end of the north platform a sign which reads, "DO NOT CROSS TRACKS: DANGER."

There was other testimony corroborative of plaintiff's testimony and the motorman's testimony, but with the view we take of the case it would serve no useful purpose to lengthen the opinion by quoting it.

I. It is clear that if plaintiff were relying on primary negligence, his own testimony forecloses any right of recovery because of his contributory negligence. A railroad track on level ground is of itself a warning of danger. [Laun v. Railroad, 216 Mo. 563, 116 S. W. 553; Drycz v. Mo. Pacific Railroad, 238 Mo. 33, 141 S. W. 861.]

Much greater is it a warning of danger when elevated approximately thirty-five feet above street level as this was. It would be difficult to conceive of a clearer case of contributory negligence on which no two minds would differ, than plaintiff was guilty of, when, in order to reach the south platform, he walked east on the open track about thirty-five feet to the viaduct; crossed the viaduct and walked west upon an open track thirty-five feet above the street and immediately facing him was the car he knew was taking on passengers preparatory to proceeding towards where he was. Suppose the motorman had motioned him to take that route, a man using ordinary care for his own safety would not have done so. [Aufdenberg v. The St. Louis, Iron Mountain & Southern Railway Co., 132 Mo. 565, 34 S. W. 485.]

II. However, plaintiff is not necessarily precluded from a recovery because of his contributory negligence if in view of all the facts, or in view of his own testimony if believed by the jury, he may invoke what law writers denominate the humanitarian rule; which is simply that rule of legal, moral and social duty which forbids one to destroy the life or limb of another even though that other fails to use ordinary care for his own safety. The motorman testifies that when he first saw plaintiff he was four feet in front of the car, but he also says he had run thirty-four feet before looking forward, and that he could have stopped the car with the appliances at hand in eight to ten feet. Certainly if he had looked he would have seen plaintiff thirty-four feet in front of him, and of course in a perilous position. At least it would be a question of fact for the jury to determine whether the motorman saw plaintiff or by the exercise of ordinary care would have seen him. Plaintiff, under the circumstances was a potential passenger, a licensee or an invitee, and can only recover for injuries received by reason of the motorman failing to exercise ordinary care to avoid injuring him after the motorman discovered his peril or might reasonably have discovered it. [Oatman v. St. Louis-Southwestern Railway Co., 304 Mo. 38, 263 S. W. 139.]

If any credence is to be placed on plaintiff's testimony he was in no sense a trespasser; he was invited to take the route he did take in order to become a passenger on defendant's car; in other words, he was an invitee, or a potential passenger, and acting on directions of the motorman, who at the time was acting for the defendant in assisting persons getting on and off the car. But whether plaintiff, under all the facts, was an invitee or potential passenger, or a trespasser, and whether the motorman was acting in the scope of his employment, and whether he saw or by exercising ordinary care could have seen plaintiff's peril, was an issue for the jury. [Hinkle v. C. B. & Q. Railroad Co. (Mo.), 199 S. W. 227; Whiteaker v. Railroad, 252 Mo. 438, 457, 160 S. W. 1009; Whitehead v. Railroad, 99 Mo. 263, 271, 11 S. W. 751; Haehl v. Wabash Railroad Co., 119 Mo. 325, 339, 24 S. W. 737; Maniaci v. Express Co., 266 Mo. 633, 182 S. W. 981;

Goebel v. United Railways Co. (Mo. App.), 181 S. W. 1051, 1053; Nolan v. Railroad, 250 Mo. 602, 157 S. W. 637; Sturgis v. K. C. Railways Co. (Mo. App.), 228 S. W. 861; Dorton v. K. C. Railways Co., 204 Mo. App. 262, 224 S. W. 30; Gray v. Phillips Bldg. Co. et al. (Mo. App.), 51 S. W. (2d) 181, 184; Clack v. Electrical Supply Co., 72 Mo. App. 506; Houck v. C. & A. Railway Co., 116 Mo. App. 559, 564, 92 S. W. 738; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1.]

Now when did plaintiff enter the danger zone? When was he first in a position of peril? This is important because he can only come within the humanitarian rule by reason of having been in a perilous position, of which the motorman was aware, or by exercising ordinary care would have known. Certainly he was not in a perilous position of being struck by this car at the moment he stepped from the north platform and on to the north rail of the track, and motioned to the motorman. He was in no danger of being struck by the car until he reached the track the car was on. The motorman may well have understood, as plaintiff contends, that plaintiff intended to walk east a distance of some thirty-five feet to the Broadway viaduct, and there cross to the south track a distance of approximately twelve to fifteen feet, and then continue west a distance of some thirty-five feet to the south platform, where the car was standing. But it would be most unreasonable to say that plaintiff was in a position of peril of being struck by the car when he began that circuitous route to reach the car. The motorman had his duties to perform in the loading and unloading of passengers, and could scarcely be charged with the duty of keeping his eye on this one man to the neglect of the many passengers. The plaintiff may have had ample time to have reached the south platform, or he could have changed his mind and remained at the north platform, or have decided to step back on the platform and return to the street level, and ascend the stairway to the south platform; but in any event he was not in a perilous position of being struck by the car until he turned at the viaduct to walk westward on the track the car was on. Plaintiff testifies that he had proceeded about two-thirds of the distance from the viaduct towards the car when it suddenly started; therefore, he was within fifteen feet of the oncoming car. He was then in a position of imminent peril. If plaintiff's testimony is true, it was the duty of the motorman to look forward in the direction he was to proceed when starting the car, and if he had done so he would have seen the plaintiff within fifteen feet and on the track in front of the car. All these matters were for the consideration of the jury.

A person is said to be in "imminent peril" within the humanitarian rule when in or about to enter the danger zone, the limits of which must be determined by the facts of the particular case. [Elkins v. St. Louis Public Service Company, 335 Mo. 951, 74 S. W. (2d) 600.]

The petition and the evidence is broad enough to bring plaintiff's case within the humanitarian rule, and the case was submitted to the jury by plaintiff on that theory alone, and so primary negligence as a cause of action, and contributory negligence, went out of the case.

III. Plaintiff's Instruction No. 1 completely ignores the vital question of whether at the time and place that plaintiff arrived at a position of peril, the motorman knew, or by the exercise of ordinary care might have known, of his peril. We could not say this was harmless; without these or similar qualifying words the instruction would be erroneous and misleading, and not properly state the humanitarian rule. The omitted elements are basic facts of liability under the humanitarian rule, unless admitted by the answer or the evidence, and here they are not so admitted. [Byrnes v. Poplar Bluff Printing Co., 74 S. W. (2d) 20, 26; Massman v. Kansas City Public Service Co., 119 S. W. (2d) 833, 836.]

For error in the instruction the cause will be reversed and remanded for a new trial in accordance with the views herein expressed. It is so ordered. *McCullen* and *Becker, JJ.,* concur.