## CARROLL, Defendant in Error, vs. PAUL'S ADMINISTRATOR, Plaintiff in Error.

1. It is not necessary to declare upon an agreement not under seal, but it is admissible in evidence, in support of the common counts in an action of assumpsit.
2. Although there is a variance between the declaration or bill of particulars, and the evidence offered in support of it, yet, where there have been previous trials of the cause, so that the introduction of the testimony is no surprise, the objection of variance is untenable.
3. Although the Supreme Court will not interfere with the verdicts of juries, on the ground that they are against the weight of evidence, yet, when hard cases appear

to arise under the operation of this rule, it must be satisfied that the instructions are entirely unexceptionable.

4. When an account between parties is stated, with debit and credit sides, and the very matter about which the controversy arises is stated in the account, the presumption of law is, that the account is just, unless it be shown that there is some fraud, omission or mistake.

5. Instructions, which are mere comments upon evidence, are properly refused.

*Error to St. Louis Court of Common Pleas.*

*B. A. Hill,* for plaintiff in error.

I. The court below erred in admitting the written agreement, dated May 1st, 1844, in evidence in this action, in *indebitatus assumpsit,* on the common counts.

II. The first instruction for the plaintiff ought not to have been given. The written agreement was, by this instruction, declared to be in force, and the jury was authorized to find a verdict in general *indebitatus assumpsit,* for the services the plaintiff had performed under said *covenant.* The plaintiff was not entitled to recover *any thing* in general *indebitatus assumpsit,* for the services he performed under the written agreement, and the court having authorized the jury to find a verdict therefor, the error is manifest, and the judgment must be reversed. *Gale* v. *Nixon,* 6 Cow. 445. 1 Chitty's Pleadings, 117, and authorities there cited. Chitty on Contracts, 565. 8 Carr. and Payne, 126. 8 Mo. Rep. 118, *Stollings* v. *Sappington.* 8 Mo. Rep. 517, *Chambers* v. *King and Tunstall.* Sel. N. P. 71 (7 ed.) 1 Wils. 117, *Alcorn* v. *Westbrook.* 2 East. 145, *Hulle* v. *Heightman.*

III. The court erred in admitting the written contract of Paul, dated 15th February, 1846, disputed by Paul on the trial, as a forgery. There was no description of that instrument in the bill of particulars, nor any statement in the declaration or bill of particulars, from which its existence could be inferred. There is no item in the bill, to which said agreement can be made to apply. The charge for extra services in the bill is under date of December 1st, 1846, at seven hours per

day, for two years and six months at $466 66-100 per year. The writing is of a different date ; declares the hours of service to be nine hours per day ; that Paul will pay at the *same rate* provided for in the *covenant*, and that the contract was prospective in its operation. The variance between that contract and the bill of particulars, is so glaring as to preclude argument.

*a.* The rule is well settled, that a variance between the evidence offered and the bill of particulars is fatal to the case. See *Holland* v. *Hopkins*, 2 Bos. & Pull., 243. 3 Esp. 168. 4 ib. 7. *Breckon* v. *Smith*, 1 Adolph. & Ell. 488. 2 Sell. 339. *Quin* v. *Astor*, 2 Wend. 577. 1 Cowen, 574, and note. *Edwards* v. *Ford*, 2 Bailey, 461. *Brown* v. *Calvert*, 4 Dana, 219. *Stanley* v. *Millard*, 4 Hill, 50. *Starkweather* v. *Kittle*, 17 Wend. 20. *Gilpin* v. *Howell*, 5 Barr, 41. Graham's Pr. 514. Dunlap's Pr. 404.

*b.* The particulars of the plaintiff's demand at the trial, are considered as incorporated with the declaration, and the party is not allowed to give any proof outside of them. 14 John. 329. 15 John. 222. 1 Camp. 60. *Peake's Case*, 172. *Williams* v. *Sinclair*, 3 McLean, 289. *De Sobry* v. *De-Laistre*, 2 Har. & John., 223, 191. *Brown* v. *Watts*, 1 Taunt. 353. *Babcock* v. *Thompson*, 3 Pick. 446. *Brittingham* v. *Stevens*, 1 Hall's Rep. 379.

*c.* The second charge in the bill of particulars is, "for balance due on service, from 1st of May, 1844, to 1st of November, 1846, as per written agreement, $166 66." A balance due was not shown by the sealed *covenant*, nor was it any evidence of a balance due ; nor was there any proof of such balance. Immediately following this item, is the item referred to in the 4th point, to wit : "December 1st, 1846, extra services *other than contained or mentioned in above named written agreement*, being seven hours each day for the term of two years six months, $466 66 per year—$1,-166 65." This clearly precludes the construction, that any agreement in *writing* existed in relation to extra services.

The paper of the 15th February, 1846, viewed as a contract, is different from the charge in the bill, as to date, time of service, hours of employment per day, and terms of contract. The variance, therefore, is not only manifest, but there is hardly any similarity between any part of the charge and the evidence, as offered by the plaintiff, in said paper of the 15th of February, 1846.

d. If the plaintiff is permitted by the court to *amend* his bill of particulars, it should be only on terms of paying all the costs, except the writ and jury fee.   He has urged the defendant to trial on a false bill, totally variant from the proof, and if he now asks leave to change his ground, he must pay the expense of a controversy in which his claim is falsely stated.

IV. The action on the agreement of May 1st, 1844, and February 15th, 1846, should have been upon them in special assumpsit.

V. The first instruction, asked by the defendant and refused by the court, ought to have been given, as all the propositions therein are good law, and strictly applicable to the case.   The first instruction (No. 14,) given by the court, in lieu of the first one asked by the defendant, does not embrace the points of direction to the jury, to which the defendant was clearly entitled, and for which he asked in his first instruction.

VI. The defendant was entitled to the fourth instruction, (No. 2 refused,) as will be seen from the testimony.   If Carroll acknowledge the justice of account "O," after he left Paul's service, then he had no claim against Paul for services, except those therein specified ; and the paper of the 15th day of February, 1846, purporting to be a claim for $600 a year for services, is fraudulent.

VII. The 13th instruction, (No. 6 refused,) as a rule of evidence, ought to have been given.   It is good law, and peculiarly applicable to this case.   The weight of the verbal admissions, at a remote period of time, is properly contrasted with the solemn admitted written testimony of the plaintiff, in his letter and in the defendant's books ; and the refusal of the

court to give this direction may have tended to produce the unconscionable verdict, rendered in this case. Greenleaf on Evidence, vol. 1 sec. 200.

VIII. The agreement for *extra services* being for only six hours per day, the second instruction is erroneous; for it authorizes the jury to find extra services to the extent of the charge in the bill of particulars for seven hours per day. This is clearly erroneous.

*Todd & Krum*, for defendant in error.

I. The bill of particulars, furnished by the plaintiff, specifies the services sued for, the length of time that the plaintiff rendered services, and the amount claimed, with sufficient particularity to enable the defendant to meet it at the trial. This is all the law requires. 1 Dunlap's Practice, 404. Graham's Practice, 514. 9 Wheat. Rep. 581. 9 Peter's Rep. 541. 6 Cow. 449. 4 Wend. 360. 5 Wend. 51.

II. The court below did not err in admitting the written agreements; Nos. 1 and 2, in evidence. The said agreements are *not under seal,* and they were competent evidence under the declaration and bill of particulars. They were not offered in evidence as the foundation of the action, but to prove the items for work and labor in the plaintiff's bill of particulars.

The law is now well settled, that where there is a special or written contract, the whole of which has been executed, on the part of the plaintiff, and the time of payment is past, *general assumpsit* can be maintained, and the measure of damages is the rate of recompense fixed by the special contract. 7 Mo. Rep. 530. 7 Cranch Rep. 299. 11 Wheat. 237. 2 Smith's leading cases, p. 19 *et seq.,* and the note to the case of *Cutter* v. *Powell,* where the whole doctrine and authorities are reviewed.

III. The court below did not err in giving the instructions asked by the plaintiff. ·

The first and second instructions are applicable to the written agreements, and both the instructions assert a correct rule of law. If the said written agreements were competent evidence

under the plaintiff's declaration and bill of particulars, then the court ruled correctly as to their effect.

The instruction numbered four, asserts a correct principle of law, upon the facts in the case.

The instructions three and five, also assert correct principles of law. Even the defendant's counsel did not claim before the court below, that the letter referred to in instruction No. 3, and the account "O," referred to in instruction No. 5, were *conclusive*, as to the state of accounts between the parties, but admitted that they were not. See instruction 5, (No. 10 given,) asked by the defendant.

. The instructions numbered six and seven are rendered nugatory by the act of the defendant himself. These instructions have relation to, and were exclusively applicable to the *set-off* of the defendant, which was formally abandoned and withdrawn by the defendant, after the instructions were given by the court. Of course, these instructions *could* not and *did* not prejudice the defendant.

IV. The court below did not err in overruling the instructions asked by the defendant.

The instruction No. 1, refused by the court below, contains propositions which are not founded on any facts in the case. Every proposition embodied in that instruction, which has relation to, or is founded on the facts in the case, was given by the court in other instructions to the jury. There was neither sense nor propriety in repeating the same propositions to the jury.

The instruction No. 4, (No. 2 refused,) asked by the defendant, and refused by the court below, contains a palpable *non sequitur*.

To say that an admission by the plaintiff, made in January, 1847, that he was indebted to the defendant, is *prima facie* evidence that "*the signature of Paul to agreement No. 2, was fraudulently obtained,*" is a proposition so grossly absurd, that a bare statement of it is its own best refutation.

The instruction No. 7, (No. 3 refused,) asked by the

defendant, and refused by the court below, cannot be sustained upon principle or authority. As an abstract proposition, it isstated too broadly, and was calculated to mislead the jury. But the point to which this instruction was directed, was fully covered by an instruction already given by the court. See instruction No. 7, asked by the plaintiff, and given by the court.

The instruction No. 9, (No. 4 refused,) asked by the defendant, and overruled by the court, is unsound. If the instruction had simply declared, that the written admissions of the plaintiff in the books of the defendant, as well as in the letter of February 14th, 1847, were testimony of a high and authentic character, as an abstract proposition, it might not be objectionable; but it goes further, and undertakes to declare, as a matter of law, that such testimony proves *the actual state of accounts between the parties*, &c.

The instruction No. 10, (No. 5 refused,) asked by the defendant, and overruled by the court, is not only unsound, as a legal proposition, but it would have been wholly inapplicable and nugatory, by reason of the defendant's own act on the trial. The set-off was abandoned, and consequently this instruction had no reference to any issue left before the jury. If the set-off of the defendant had not been abandoned, this instruction should not have been given.

The instruction No. 13, (No. 6 refused,) asked by the defendant, and refused by the court below, was properly refused. The court had already instructed the jury, in respect to written testimony, in respect to parol testimony and in respect to admissions. There was no denial on the part of the plaintiff in respect to what was stated in his letter of January 14th, 1847, nor in respect to what appeared by his entries in Paul's books. There was no evidence given, to contradict or support either the said letter or said entries. The instruction, in the form it was asked, was calculated to confuse and mislead the jury. Besides, the instruction merely asserts abstract propositions, and which are not applicable to the facts of the case.

There is yet another reason why this instruction should have been refused. The conclusion, that "the verbal testimony, as to the declarations of parties, is to be received with great caution," is stated too strongly, and as an abstract proposition is erroneous.

It is not true, as a matter of law, that verbal testimony is to be received with great caution. Verbal testimony is to be received and weighed by a jury, like any other testimony. A verbal statement may be as certain as one that is written, if there be no circumstances calculated to weaken one's confidence in the recollection of the party, or witness, making such statement, and there is no greater caution to be used in the one case abstractly, than in the other. The memory of a witness, who gives a verbal statement of a fact, may be in fault, and, on the other hand, the writing, relied on as containing a given fact, may be all interpolation or forgery.

V. The court below did not err in refusing to grant a new trial. There had already been two trials, and the jury, upon the third trial, (the verdict now under consideration,) did not err in any matter of law.

SCOTT, Judge, delivered the opinion of the court.

This was an action of assumpsit, begun by Carroll against Paul, for services rendered as an agent. The account for the services was evidenced by two written agreements. By the first, dated May 1st, 1844, it was agreed that Carroll should have two hundred dollars per year, payable quarterly, in consideration that he would act as agent for Paul, in settling accounts, keeping his books, collecting rents, &c., provided, that on an average, he should not be employed more than three hours per day. This employment was not to interfere with any other business of Carroll's. If he rendered three hours service a day, he was at liberty to do what else he thought proper. By a second agreement, dated the 15th of February, 1846, Paul agreed to pay for all extra services that had been, or should be rendered under the first agreement, and in it, is contained this admission by Paul: "I do think the services men-

tioned to be equal to about nine hours per day." Objection was made to the reading of the first agreement, because it was a covenant, and could not be declared on in assumpsit; and to the second agreement, because the claim it established was variant from that in the bill of particulars. Under this agreement, the bill of particulars claimed for seven hours service, extra, per day. No reference is made in the bill of particulars to the agreement, under which the item for extra services is claimed. The bill of particulars claims for full services, under the first agreement, from the 1st of May, 1844, until the 1st of November, 1846, and the extra services are claimed for the same time. Paul was the owner of some city property, and the leasing and the selling of it, and the collection of its rents, &c., the only business in which he was employed. Some time after Carroll left the employment of Paul, an account against him was presented, in which, after allowing credits, a considerable balance was claimed. This account included, amongst other items, one for money due for lands in Lincoln county, sold to Carroll, and gave him credit for his services under the first agreement, at the rate of two hundred dollars per annum. Carroll agreed to pay the account, although he complained that the Lincoln lands were included in it. On the 14th of January, 1847, Carroll wrote a letter to Paul, in which he acknowledged the receipt of the account, and confessed that he ought to have called before and settled with him, and begged for indulgence. This suit was commenced on the 28th of August, 1847. Many witnesses, acquainted with Paul's handwriting, were examined touching the genuineness of the signature to the agreement, relative to the extra services, some of whom believed the signature to be Paul's, others believed the contrary. There was some evidence that Paul acknowledged a willingness to pay for extra services. The evidence with regard to the number of hours in a day, necessary to transact the business of Paul, was contradictory. Some witnesses thought three hours a day more than sufficient, and one witness testified that he was employed nine hours. A clerk, who

did the services rendered by Carroll, testified, that his conscience would not let him take twelve dollars per month for them. He thought ten dollars per month a sufficient recompense. There was a verdict for the plaintiff for $973 62. After verdict, Paul died, and the suit was revived in the name of M. Brotherton, his administrator, who appealed to this court. The court gave and refused the instructions which follow.

Those given by the court, on the part of the plaintiff, are :

1. If the jury believe from the evidence that the defendant made the agreement read in evidence, dated May 1st, 1844, and that the plaintiff performed services for the defendant, in conformity with said agreement, then the plaintiff is entitled to recover, according to the price specified in said agreement, for all the services which the jury shall believe from the evidence the plaintiff performed, under said agreement, not to exceed, however, the amount claimed in his bill of particulars, in this suit.

2. If the jury believe from the evidence, that the defendant made the agreement, read in evidence, dated February 15th, 1846, and that the plaintiff performed services specified in said agreement, for the defendant, then the plaintiff is entitled to recover, according to the price specified in said agreement, for all the services which the jury shall believe, from the evidence, the plaintiff performed for the defendant, as contemplated by said agreement, not exceeding, however, the amount claimed in the plaintiff's bill of particulars.

3. The letter written by the plaintiff to the defendant, dated January 14th, 1847, is not conclusive evidence against the claim of the plaintiff; therefore, if the jury shall believe from all the evidence, that the defendant was, in fact, at that time, indebted to the plaintiff for services, as stated in his bill of particulars, then the jury should find for the plaintiff whatever amount the jury shall believe from the evidence the defendant was so indebted.

4. If the jury believe from the evidence, that the instrument of writing, dated February 15th, 1846, was subscribed by the

defendant, the jury must presume that he knew the contents of said writing, at the time he subscribed it ; unless the jury, at the same time, shall believe from the evidence that he was not competent, by reason of some mental or physical disability, to make or understand the said writing ; or that the same was obtained from him by fraud or deception.

5. The books of accounts, as well as the account marked "O," offered in evidence by the defendant, are not conclusive against the plaintiff, as to the state of accounts between him and the defendant, and the whole may be explained by the evidence in the case ; therefore, if the jury shall believe from all the evidence, that the defendant is justly indebted to the plaintiff for the services sued for, the jury should find accordingly.

6. If the jury believe from the evidence that the moneys collected by Carroll, while acting as Paul's agent, were paid over to Paul and accounted for to him, then the jury should disallow the claim for said moneys made by the defendant in this case.

7. If the jury believe from the evidence that the defendant, on or about the time stated by the witness, Barr, rendered the account marked " O" to the plaintiff, and that said account does not contain the moneys claimed in this suit by the defendant, as having been collected by the plaintiff and not accounted for, the rendering of said account by the defendant is *prima facie* evidence that the claim for such moneys is unfounded, unless the jury shall believe from the evidence, that Paul, at the time he rendered said account, did not know that Carroll had collected the said moneys and had not accounted therefor.

To the giving of each of the above instructions, the defendant, at the time, objected and excepted.

Those given by the court for the defendant, are the following:

8. If the jury should believe from the evidence, that the signature to the agreement No. 2, was made by Paul, yet, if they find from all the evidence and circumstances of the case, that Paul did not owe Carroll anything, upon a fair settlement of

accounts, at the time of the commencement of this suit, they are authorized to find for the defendant, notwithstanding said agreement No. 2.

9. If the jury believe from the evidence, that Carroll and Paul had a settlement, after Carroll left the employment of Paul; that the bond given by Carroll and his securities to Paul, was cancelled thereon, and that Carroll paid the balance to Paul, which was claimed in account "O," without making any claim at that time for extra services, and that such balance was paid, in accordance with the promise made to John Barr and to the defendant, in the letter of the 14th of January, 1847, then the jury are authorized to find for the defendant; unless the jury are further satisfied from the evidence, that said settlement and payment were not a full and complete settlement between the parties, nor so designed by them.

10. If the jury believe from the evidence, that the plaintiff, upon the receipt of account "O," wrote the letter to defendant, dated January 14th, 1847, asking further time to be given him for the payment of money acknowledged to be due to the defendant by him, that is evidence (the said letter is not conclusive evidence on that point,) from which the jury would be authorized to infer that the plaintiff, Carroll, did not then regard Paul as his debtor, on the account here sued for.

11. If the jury believe from the evidence, that the signature to agreement No. 2 was written by Paul, yet, if the jury should also believe from the evidence, as presented in the books of account kept by Carroll, the letter of the 14th of January, 1847, written by Carroll, in answer to account "O," and from all the other circumstances of the case, that said Carroll has fully settled with the defendant for services; or that said Carroll has, by his acts or declarations, admitted himself to have been fully paid and satisfied for his services, they will find for the defendant.

12. The account kept in the ledger and cash book of Paul, by Carroll, is competent, though not conclusive evidence, to show the state of accounts between Carroll and Paul, as to the

matters of account therein embraced and for the period of time therein included.

13. The paper called agreement No. 2 is not *prima facie* evidence of its own genuineness in this case. The burden of proof of the genuineness of the signature of Paul to said agreement No. 2 is upon the plaintiff.

Instead of the defendant's first and third instructions, which were refused, the court gave the following:

14. If the jury believe from the evidence, that the signature to the paper, dated February 15th, 1846, is a forgery, or that Paul never signed said paper, or that said paper was obtained from Paul fraudulently, then they will disregard said paper in their consideration of this case.

15. Evidence of verbal admissions of parties to a suit, at a distant period of time, should be received with great caution, in order that the precise admission may be ascertained. In determining what weight ought to be given to the testimony of verbal admissions, the jury should consider the opportunity which the witness had of hearing distinctly the alleged admissions, and the probability of their being distinctly remembered for so long a period.

The instructions asked by the defendant, and refused by the court, are as follows:

1. If the jury believe, from the evidence, that there is no consideration for the agreement of February 15th, 1846, or that the signature of Paul thereto is a forgery, or that the writing over the signature was filled in by the plaintiff, without Paul's consent: or that from all the circumstances of the case, said agreement was not held by the plaintiff, and had not been delivered by the defendant to the plaintiff, as a valid and subsisting agreement, then the jury are authorized to disregard said agreement, in their consideration of this cause.

2. If the jury believe from the evidence, that after the plaintiff, Carroll, left the service of Paul, he (Carroll,) acknowledged himself to be indebted to Paul, upon the account delivered to him by John Barr, and asked for further indulgence,

that circumstance is *prima facie* evidence, that the signature of Paul to agreement No. 2 was fraudulently obtained.

3. Evidence of verbal admissions of parties to a suit, at a distant period of time, is a weak kind of evidence, and is always to be received with the greatest caution by a jury.

4. The written admissions of Carroll, in the books and in the letter of the 14th of January, 1847, are testimony of a high and authentic character, showing the actual state of accounts between the parties, at the time such admissions were made.

5. If the jury believe from the evidence, that Carroll has not accounted for all the moneys of Paul, which he had collected, while acting as Paul's agent, they are authorized to find a verdict for the defendant, for such sum as the jury shall believe from the evidence, the said Carroll has failed to account for ; and in ascertaining such amount of money not accounted for, the jury are authorized to regard the condition of the plaintiff, as to means and capital, when he went into the defendant's service, his means of accumulation while in such service, and the amount of property and money he had at the conclusion thereof.

6. The evidence of the plaintiff's admitted handwriting, in the letter of January 14th, 1847, and in the defendant's books, is of a much higher and more reliable character, than the evidence given in relation to verbal declarations of the parties, at a remote period of time. The written testimony is certain and definite, so far as it goes ; the verbal testimony, as to the declarations of parties, is to be received with great caution.

1. There was no error in receiving the first agreement in evidence under the pleadings. The action was assumpsit in form, and the agreement, not being under seal, was, of course, evidence in support of the common counts in the declaration, the agreement having been executed. The instrument not being sealed, it was not necessary to declare upon it.

2. We consider that there was a variance between the second agreement and the item founded upon it in the bill of

particulars. This objection, however, might have been obviated by an amendment, on such terms as would serve the ends of justice, and as the circumstances of the case required. This, however, could only have been necessary on the first trial. As the last was the third trial of the cause, we are at a loss to conjecture how the defendant could have been injuriously affected by the introduction of such testimony. It certainly created no surprise, as the former trial must have informed him of the future course of the plaintiff. Under the circumstances, we consider the objection untenable.

3. This court will not interfere with verdicts, on the ground that they are against the weight of evidence. We do not sit here to reverse the verdicts of juries, when the law of the case has been properly put to them. The propriety of this rule is demonstrated by the fact, that every member of the profession deems it a good one, if so limited in its operation as not to affect his cases. It is obvious, that any relaxation of the rule, in particular cases, would have the effect of bringing up for review a large number of verdicts, as the zeal of parties would readily persuade them, that their cases were within the exception. But while this is our purpose, we cannot shut our eyes to the fact, that under the operation of this rule, some hard cases will arise. In such, this court must be satisfied that the instructions given for the party obtaining a verdict, are *omni exceptione majores ;* for we will not presume that, in a plain case, the jury have trodden the facts under their feet, but that they must have been misled by the instructions of the court. It is but occasionally that juries will take the bit in their teeth and go where they please. In most cases, they are willing that the responsibility of their verdict should rest on the court.

The second instruction given for the plaintiff cannot be maintained, as it involves a misconstruction of the second agreement. That agreement contains an expression of the opinion, on the part of Paul, that the services of Carroll were equal to about nine hours a day. That opinion must be construed to mean, that nine hours a day were necessary to do the

Carroll *v.* Paul's Administrator.

services required, as the opinion is expressed, not only for the term past, but for that to come.    There was no evidence that more than nine hours were employed.    Indeed, it was conceded in the argument, that compensation could be claimed for but nine hours service.    This instruction, then, taken in connection with the bill of particulars, to which it refers, authorized the jury to fix the services at ten hours.

4.    The instructions given, with regard to the effect of the admission of the justice of the account, and that contained in the letter of the 17th of February, 1847, were not expressed in terms, such as the circumstances of the case required.    The verbal admission and the letter made the account rendered a stated account.    The account had both a debit and credit side, and the plaintiff was credited for services, from the 1st of January, 1846, till the first of November following, and was allowed only for three hours services per day.    The plaintiff admitted twice, that this account was just.    Under such circumstances, the jury should have been told, that the account was conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is shown.    It is no answer to say, that the fifth instruction (No. 10 of the instructions given,) asked by the defendant, gives the same law as to the inconclusiveness of the effect of the admissions.    If the parenthesis in that instruction was inserted by the defendant, such an act must have been induced by the previous instruction of the court, given at the instance of the plaintiff.    The defendant was obliged to take the law as it had been declared by the court.    He did all he could; he excepted to the instructions, and was compelled to go to the jury with the law as it had been given.    When an account between parties is stated, as this one is, with debit and credit sides, and the very matter, about which the controversy arises, is stated in the account, the presumption of law is, that the account is just, and by that presumption the jury should stand, until they are satisfied that there is some fraud, omission or mistake.    *Gibson* v. *Hanna*, 12 Mo. Rep. 162.

5.    There was no error in refusing defendant's instructions

numbered 2, 4, 5 and 6, as they were comments on, or directions to the jury, to draw inferences from certain facts. Such instructions involved no law, and comments on the evidence are not to be given to the jury by way of instruction. If the Judge sees proper to comment on the evidence to the jury, he should do it in such a way as not to infringe on the rights of juries. They are not obliged to take his views of the evidence in a cause, although he may grant a new trial, where justice requires it. The other Judges concurring, the judgment will be reversed, and the cause remanded.