## CHARLES W. NOLAN v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, May 31, 1913.

1. **PLEADING: Passenger and Carrier: Appeal.** An allegation that plaintiff attempted to board defendant's street car for the purpose of becoming a passenger thereon is sufficient on appeal to bring the case within the relationship of passenger and carrier.

2. **MOTION FOR NEW TRIAL: Overruled: Proper Exception.** An entry in the Bill of Exceptions that "the court overruled the defendant's foregoing motion for a new trial and in arrest of judgment, to which action and ruling of the court in overruling said motion for a new trial and said motion in arrest of judgment the defendant at the time duly excepted," is sufficient to show that an exception was taken to the overruling of the motion for a new trial.

3. **NEGLIGENCE: Invitation to Passenger from Street Railway: Evidence.** Street railway companies have the right either to invite or permit persons to take passage upon their cars at any safe place along their lines, and having either invited or signified their permission to receive one for such transportation, he becomes entitled to all the rights of a passenger, while employing the facilities that the carrier provides, to enable him to avail himself of such invitation or permission. In this case the plaintiff, according to his testimony, stepped over the fence and upon the side of the street bounding an unimproved tract of city property, and, seeing a car approaching at a distance of a hundred feet, signaled with his hand for it to stop

to which the motorman replied with a nod and a slackening of speed. Plaintiff then moved to a position beside the track and opposite an alley through which traffic entered the street. When the car reached him, running then, he says, at not more than two miles an hour, he put one foot on the step, seized a handrail with one hand, and was about the grasp another handrail with his other hand, when the car suddenly increased its speed with such a jerk that his hold was broken and he feel beneath the wheels. *Held*, sufficient evidence to support a verdict for plaintiff upon the theory that he had become a passenger.

4. ————: ————: **Bringing Car to Dead Stop.** It is not necessary, in order to make one a passenger on a street car, that permission to board should be signified by bringing the car to a dead stop. This permission may be granted in any way well calculated to notify the would-be passenger of its existence, and by giving him an opportunity to enter the car with perfect safety.

5. ————: ————: **Instructions: Assuming Facts.** The principal issue in the case was whether the motorman, as plaintiff asserts, upon a signal from him expressing his desire to take passage on the car, indicated his consent by reducing his speed to two miles an hour, or whether, as defendant asserts, no signal was given and the car continued to run at a speed of ten or twelve miles an hour until plaintiff was injured while attempting to board it. The law applicable to that issue was explained in an instruction given for plaintiff, and the jury were also told in another of his instructions that in determining whether or not the plaintiff was guilty of negligence in getting on a moving car they should consider whether, in so doing, he used such care as would have been used by an ordinarily prudent person under the same circumstances. The court also instructed the jury, at plaintiff's request, that "a carrier of passengers is required to use the highest degree of care," and its failure so to do would constitute negligence, but did not in any of the instructions define the word "passenger" or tell the jury what facts to which the evidence was applicable would constitute the plaintiff a passenger. *Held*, that the giving of the last mentioned instruction was, in the circumstances, error.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

Reversed and remanded.

*John H. Lucas* and *Charles N. Sadler* for appellant.

(1)   The court erred in submitting the case to the jury upon the pleadings filed herein. · The petition wholly fails to state a cause of action against the appellant in the following respects: (a)   It wholly fails to allege sufficient facts to warrant the conclusion that the respondent became or was a passenger upon appellant's cars.   (b)   It wholly fails to allege any fact evidencing that appellant intended to receive or extended any invitation on the part of respondent to become or attempt to become a passenger upon its cars.   (c)   It wholly fails to state facts sufficient to constitute a cause of action.   R. S. 1909, sec. 1794; Rodgers v. Insurance Co., 186 Mo. 255; Schepers v. Union Depot Co., 126 Mo. 673; Schaefer v. Railroad, 128 Mo. 71; Raming v. Railroad, 157 Mo. 477; Railroad v. Liddicoat, 99 Ala. 545; Corum v. Railroad,   113 Mo. App. 631;   Scott v. Railroad, 138 Mo. App. 204.   (2)   The evidence is insufficient to warrant a verdict in behalf of respondent herein, and the court erred in refusing to sustain the demurrer offered at the close of plaintiff's case, and in refusing to sustain the peremptory charge requested at the close of all the evidence in the case, for the reason that under the evidence the respondent was not entitled to recover.   Devoy v. Railroad, 192 Mo. 211; Schepers v. Union Depot Co., 126 Mo. 673; Schaefer v. Railroad, 128 Mo. 71; Raming v. Railroad, 157 Mo. 477; Lehnick v. Railroad, 118 Mo. App. 611; Bartley v. Railroad, 148 Mo. 124.   (3)   The court erred in giving instructions requested by the respondent.   These instructions enlarge the issues, submit issues not tendered by the pleadings, assume facts not stated in the pleadings nor warranted by evidence, having a tendency to mislead the jury, and are erroneous and unauthorized by the law governing the controversy between the respondent and appellant.   (a)   Instruction 1 assumes that the

relationship of passenger and carrier existed and such fact is neither alleged in the petition nor shown to exist in evidence, and is controverted by the evidence and shown not to exist by the preponderance of all the evidence; is misleading, having a tendency to divert the mind of the jury from the real issues involved therein. Browning v. Railroad, 118 Mo. App. 458; Bank v. Wallace, 21 Mo. App. 572; Wright v. Fonda, 44 Mo. App. 642; Kirby v. Railroad, 85 Mo. App. 350; Degonia v. Railroad, 224 Mo. 589; Black v. Railroad, 217 Mo. 685; Day v. Railroad, 81 Mo. App. 471; 1 Blashfield, Instructions to Jury, secs. 29-30. (b) Instruction 2: R. S. 1909, sec. 1794. Rodgers v. Insurance Co., 186 Mo. 255; Schepers v. Union Depot Co., 126 Mo. 673; Schaefer v. Railroad, 128 Mo. 71; Raming v. Railroad, 157 Mo. 477; Railroad v. Liddicoat, 99 Ala. 545; Corum v. Railroad, 113 Mo. App. 631; Scott v. Railroad, 138 Mo. App. 204; Devoy v. Railroad, 192 Mo. 211; Browning v. Railroad, 118 Mo. App. 458; Bank v. Wallace, 21 Mo. App. 572; Wright v. Fonda, 44 Mo. App. 642; Kirby v. Railroad, 85 Mo. App. 350; Degonia v. Railroad, 224 Mo. 589; Black v. Railroad, 217 Mo. 685; Day v. Railroad, 81 Mo. App. 471; 1 Blashfield, Instructions to Jury, secs. 29-30; Nugent v. Milling Co., 131 Mo. 241. (c) Instruction 3: Moore v. Railroad, 126 Mo. 275; Hansberger v. Electric L. & P. Co., 82 Mo. App. 579. (d) Instruction 9: Stid v. Railroad, 236 Mo. 382.

*Boyle, Guthrie, Howell & Smith* and *Joseph S. Brooks* for respondent.

(1) A motion for new trial and a motion in arrest of judgment are distinct matters of procedure, requiring separate adjudications and separate exceptions thereto. McKee v. Jones, etc., Co., 152 Mo. App. 241. (2) The petition sufficiently alleged the relation of passenger and carrier, but if it had not, there was no demurrer or objection to the introduction of testimony,

and it was good after verdict. O'Mara v. Transit Co., 102 Mo. App. 202, 208; Spencer v. Transit Co., 111 Mo. App. 665; Milliken v. Commission Co., 202 Mo. 637; Cobb v. Railroad, 149 Mo. 143; Thomasson v. Insurance Co., 217 Mo. 497; Moellman v. Lumber Co., 134 Mo. App. 489; Doherty v. Kansas City, 105 Mo. App. 173; Hurst v. Ash Grove, 96 Mo. 168; Hilz v. Railroad, 101 Mo. 36; Stewart v. Outhwaite, 141 Mo. 562; Hefferman v. Ragsdale, 199 Mo. 375; Moore v. Board of Regents, 215 Mo. 726; McCarthy v. Railroad, 105 Mo. App. 596; Padgitt v. Railroad, 159 Mo. 152; Holt v. Railroad, 87 Mo. App. 211; Powell v. Railroad, 229 Mo. 267; Holt v. Railroad, 174 Mo. 529; Booth on Street Railway Law, sec. 326; O'Brien v. Transit Co., 212 Mo. 67; Lange v. Railroad, 208 Mo. 475; Cowen v. Railroad, 113 Mo. App. 631; Scott v. Railroad, 138 Mo. App. 203; Devoy v. Transit Co., 192 Mo. 197; Sharp v. Railroad, 213 Mo. 527; Bragg v. Railroad, 192 Mo. 357; Niellor v. Railroad, 102 Mo. 470. (3) Under the evidence plaintiff was entitled to recover—the demurrer to the evidence was properly overruled. (a) It is not negligence per se to attempt to board a moving car unless it is so obviously dangerous, that no prudent man would assume it; and especially is this the case where the conduct of the motorman is such as to invite plaintiff to board it, or lead him to believe he was so invited. (b) Contracts of carriage between passenger and carrier are made every minute of the day by signal and responsive movements of the carrier's servants and are as complete and binding as if made in writing. (c) Where a signal is given or the attitude is such as to indicate a wish to board a car, and either is seen and recognized by the motorman and in apparent response he turns off the power, indicating that the car will be stopped, the contract of the carrier and passenger is complete. (d) It is not necessary that there should be an express contract to constitute the relation of carrier and passenger, nor that there should be a consummated contract. It

may be implied from slight circumstances. The existence of the relation depends largely upon the intention of the party at the time he enters, or while attempting to enter. (e) Where a person intends to take passage on a street car, and has hailed it for that purpose, and it has slowed down as it approached, apparently for the purpose of receiving him, he is to be regarded as a passenger while prudently attempting to enter upon the car. Spencer v. Transit Co., 111 Mo. App. 653; Scott v. Railroad, 138 Mo. App. 203; Devoy v. Railroad, 192 Mo. 197; Clark's Street Rys. (2 Ed.), sec. 3; Barth v. Railroad, 142 Mo. 535; Booth on Street Ry. Law, sec. 326; 2 White on Personal Injuries, sec. 784; Murphy v. Railroad 43 Mo. App. 342; Leslie v. Railroad, 88 Mo. 50; Buesching v. Gaslight Co., 73 Mo., 219; Donahue v. Railroad, 91 Mo. 357; Powers v. Transit Co., 202 Mo. 267. (4) Instruction numbered 1, given for plaintiff, follows the established precedents; the giving of a special instruction defining the degree of care required has always been the practice in Missouri. This instruction does not fall within the rule applied by appellant to "instructions of a general character." Orcutt v. Century Bldg. Co., 201 Mo. 424; Tillman v. Transit Co. 102 Mo. App. 557; Gilroy v. Transit Co., 117 Mo. App. 663.

BROWN, C.—This is a suit for personal injury alleged to have been suffered by plaintiff through the negligence of the motorman in operating an electric street car on defendant's street railway in Kansas City. That part of the petition which relates to the issue in this appeal is as follows:

"That on or about the 9th day of September, 1907, plaintiff attempted to board one of defendant's westbound cars on said Thirty-first street at or near the intersection of said Thirty-first street with College avenue, for the purpose of becoming a passenger thereon, and that while he was in the act of so doing, de-

fendant so carelessly and negligently ran, operated and managed said car as to cause plaintiff to be thrown therefrom and upon said Thirty-first street and caused him to be run over by said car and thereby caused him to be greatly injured.''

Damages were asked in the amount of thirty-five thousand dollars. The answer was a general denial, and general plea of contributory negligence.

The accident happened on Thirty-first street, which extended east and west and was occupied by a double track street railway operated by defendant with electric power. The north track was used by the westbound traffic and the south track by eastbound traffic, after the usual manner of American railways. The street was unpaved from Indiana avenue on the east to Bellefontaine avenue on the west, say three or four blocks. For this entire distance, and extending a distance of three city blocks south from Thirty-first street the land was fenced in a single field which was called at the trial ''the pasture'' and was in grass, with a few trees. The plaintiff was a landscape gardner, twenty-eight years old, something over six feet in height, weighing about two hundred and fifteen pounds, and was strong and active. He had been examining the sod in the pasture, had purchased some of it, and wanted to return to his work at Thirty-first street and Woodland avenue, about ten blocks west. There were no houses on the south side of Thirty-first street between Indiana and Bellefontaine and only one or two on the north side. None of the streets were paved in that vicinity. The plaintiff, who was his own sole witness as to the immediate circumstances of the accident, said he had just come up to the wire fence along the south side of Thirty-third street opposite to a travelled road that turned into it both ways on the north side. He pressed down the wire, stepped over the fence, and saw the car coming about a hundred feet to the east, and signaled with his right hand for it to stop. The motorman ''just nodded

his body—just nodded.'' He was then about twenty-five feet from the south track. The front vestibule where the motorman stood, as well as the rear one, was open, and there were no gates to keep one from getting on or off, and he could see the motorman as plain as he could see anything. They were looking at each other. He walked over to the north rail of the south track and stood there. When he gave the signal he saw the motorman make a turn like he was turning the motor and reached over with his right hand. The power relaxed and gradually died out. He could tell this from the noise or buzz of the car. When the car had got to a point about twenty feet east of him ''it had,'' in the words of the witness, ''slowed down quite a bit; it was not running, I would not say, over a couple of miles an hour. A man could easily get on it if it would keep on slowing.'' Continuing the substance of plaintiff's statement in the first person as it is condensed in the appellant's brief he said:

''When I reached the north rail of the south track I gave him another signal of the same kind, just in a way to be sure of it. The car came on, and when I gave this signal I stepped across from that rail over to where I could get on the car. The car was running at the same rate of speed. I stepped over there to wait until where I could get on, and then I would step on; I got hold with both hands and stepped on. I should say the car was running something like two miles an hour. I stepped my right foot on the step and reached up and caught hold with this hand: I didn't get a very good hold, but when the car went on, the car just jumped; caught hold of the car with the right hand on the handle of the body of the car; my right foot was on the step.

''My left hand just had caught hold of the other handle, the handhold on the side of the vestibule; did not get a firm hold, just got my fingers on the handle and the car started; it started with a jerk, that is what

pulled this hand loose. All those cars start with a jerk; it jerked this hand loose and I went with my back right around with the car and I fell under it."

The appellant introduced much testimony to the effect that at the time plaintiff undertook to board the car it was running from ten to twelve miles per hour; that he did not signal nor communicate with the motorman in any way, but simply stood beside the track and caught it as it passed.

There was no evidence introduced by the defendant as to the character of the plaintiff's injuries. The testimony of the surgeon who treated him from the day after the accident, when his right leg had already been amputated about midway between the ankle and the knee, up to the time of the trial six months afterwards, was to the effect that "he was generally bruised up in all parts of his body." Among these injuries, in addition to that which made the amputation necessary, was a compound fracture of the nose which has left a scar and some disfiguration; the fifth metacarpal bone of his right hand was broken and the fourth one bruised, and was bruised about the back, shoulders and chest. He has lost the use of his right hand and forearm to a considerable extent, the muscles supplied by certain nerves seeming to be powerless. He has no use of nor sensation in the ring and little fingers of his right hand. The hand is affected by a form of paralysis. The surgeon thinks the condition is permanent.

At the close of plaintiff's testimony, and also when all the testimony was in, the defendant asked an instruction in the nature of a demurrer to the evidence which was each time refused by the court and defendant excepted. The court then gave the following instructions for plaintiff.

"1. A carrier of passengers is required to use the highest degree of care reasonably practicable among prudent and skillful men in that kind of business to carry its passengers safely, and its failure, if any, to

use such care would constitute negligence on the part of such carrier. A passenger is bound to use ordinary care, that is, such care as would be used by an ordinarily prudent person under the same or similar circumstances, and his failure, if any, to use such care would constitute negligence on the part of such passenger.

"2. If the jury find and believe from the evidence that on September 9, 1907, the defendant was operating the car on which plaintiff claims to have attempted to take passage, for the purpose of carrying passengers for hire, and if the jury further find and believe from the evidence that on said September 9, 1907, plaintiff, while standing at or near the intersection of Thirty-first street and College avenue, if he was, signaled defendant's motorman in charge of its westbound car, approaching said point, of his intention, if any, to become a passenger upon said car at said place; and if the jury further find and believe from the evidence that said motorman, in obedience to his signal, slowed down said car as it approached the place where plaintiff was standing, for the purpose of receiving him as a passenger thereon while it was so slowed down and moving slowly at such point; and if you further find and believe from the evidence that while said car was so slowed down and so moving slowly at such point, if it was, the plaintiff stepped upon the step of such car for the purpose of becoming a passenger thereon, with the knowledge and consent, if any, of the motorman in charge thereof; and that while the plaintiff was so getting upon said car and before he had a reasonable time or opportunity to get upon said car as a passenger, defendant's motorman in charge of said car negligently caused or suffered said car to suddenly go forward with increased speed and shock, and that thereby plaintiff was caused to be thrown and fall from said car and sustain injuries; and if the jury further find and believe from the evidence that the defendant's motorman so in charge of said car, while plaintiff was in the act of get-

ting on said car, failed in the foregoing respects to exercise such high degree of care as would have been exercised by a skillful and careful motorman under the same or similar circumstances and thereby directly caused said movement of said car and plaintiff's injuries, if any; and if the jury further find and believe from the evidence that the plaintiff was not guilty of negligence which produced or contributed to his injury, then your verdict should be for the plaintiff.

"3.   In determining whether or not the plaintiff was guilty of contributory negligence in getting on a moving car, if he was, you are instructed that if in so doing he used such care as would have been used by an ordinarily prudent person under the same or similar circumstances, then he was not guilty of such contributory negligence.

"4.   Even though you may believe from the evidence that the plaintiff was guilty of negligence in getting upon a moving car, if he did, still, if you further believe from the evidence that he would have reached a position of safety on said car except for a subsequent and accelerated negligent movement thereof, if any, by the motorman in charge of such car, and that such subsequent movement, if any, was the direct cause of his injuries, if any, then plaintiff's prior negligence, if any, in attempting to get upon said car is in itself no defense to this action, but you cannot find for plaintiff except you find the facts to be as outlined in instruction 2."

Also an instruction relating to damages, which closed as follows: "Your verdict cannot exceed the sum of thirty-five thousand dollars." At the defendant's instance, the court gave, among others unimportant to the issues here, the following instruction:

"7.   The court instructs the jury that it was not the duty of the defendant's motorman to stop his car in the middle of the block to permit a person to become a passenger. So that in this case if you find and believe from the evidence that the motorman operating defend-

ant's car was running it at full speed, and did not stop or slacken the speed of his car to permit plaintiff to become a passenger thereon, your verdict will be for the defendant."

And refused the following:

"A.   If the jury believe and find from the evidence that plaintiff attempted to get upon defendant's car while the same was in motion, and fell by reason of the car being in motion at the time he so attempted to get on said car, your verdict will be for the defendant."

To all adverse rulings defendant duly excepted. The verdict was for plaintiff for twenty-five thousand dollars.

Motions for a new trial and in arrest of judgment were filed in due time, and after a remittitur of seventy-five hundred dollars, which the court required as a condition of sustaining the judgment, these motions were overruled in the following order:

"Now on this day comes the plaintiff and remits from the amount of the verdict heretofore rendered in his favor the sum of seven thousand five hundred dollars, leaving the balance of said verdict seventeen thousand five hundred dollars. Whereupon defendant's motion for a new trial of this cause, also motion in arrest of judgment, are by the court overruled, to which said rulings of the court defendant excepts." ·

This action is preserved in the bill of exceptions as follows:

"On Monday, March 30, 1908 the same being the sixty-seventh day of the January term, 1908, the court overruled the defendant's foregoing motion for a new trial and motion in arrest of judgment.   To which action and ruling of the court in overruling said motion for a new trial and said motion in arrest of judgment the defendant at the time duly excepted."

Judgment was thereupon entered for seventeen thousand five hundred dollars, from which this appeal is taken.

I. . The appellant first insists that the petition wholly fails to state facts sufficient to constitute a cause of action. While its objections are not indicated in its brief with clearness, they are evidently intended to be included in or suggested by the statement that "to recover, the petition must count on the relation of passenger and carrier, and state sufficient facts to bring the case within such relationship." If this means that where the carrier is sued for an alleged violation of duty to a passenger, the petition must set out all the acts by which the relation was brought about, it is a mistaken conception of the law relating to pleading under our code, which requires that only "the substantive facts" shall be pleaded. These are called by this court in Bragg v. Railroad, 192 Mo. 331, 335, the *ultimate* as well as the substantive facts, and it is there stated to be "a hornbook principle that the pleading of mere evidential facts is bad." The petition copied in the official report of that case illustrates the application of the rule to this It sets out the relation of passenger and carrier by the statement "that while plaintiff was on said car as a passenger" the negligence occurred. The petition in this case states that the plaintiff was entering the car for the purpose of becoming a passenger, leaving the court as well as the adversary party to infer the relation which that fact implied, and that the inference was well drawn is shown by the fact that the case was tried and submitted by both parties upon the issue whether or not the motorman slackened the speed of his car to permit the plaintiff to become a passenger thereon. But the question here is not whether by the technical rules of either grammar or pleading it is stated that the plaintiff was a passenger upon defendant's car. The code not only provides that the pleadings "shall be liberally construed, with a view to substantial justice between the parties" (R. S. 1909, sec. 1831), and that the pleader shall not be required to state evidence. (*Id.*,

*Margin note beside paragraph:* Negligence: Passenger: Pleading.

sec. 1818), but the courts are directed "in every stage of the action" to "disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party" (*Id.*, sec. 1850); and in the section last cited the appellate court is especially directed that "no judgment shall be reversed or affected by reason of such error or defect." Justice will not allow a party to lie in wait for his adversary, take his chances on a verdict and then, if it be against him, profit by the strict technicality of the science of pleading, if a liberal construction will obviate the objection. [Cobb v. Railroad, 149 Mo. 135, 144; Milliken v. Commission Co., 202 Mo. 637, 654-5; Thomasson v. Insurance Co., 217 Mo. 485, 497.] In the case last cited it was said to be the well-settled rule, at common law as well as under the code, that if a material matter be not expressly averred in the petition, but is necessarily implied by what is stated in the context, the defect is cured after verdict. Applying these rules to this petition it is amply sufficient to sustain the judgment upon the theory upon which the case was submitted by the court, to which we shall again have occasion to refer.

II. The respondent contends that no matter of exception which our practice requires to be reviewed upon motion for a new trial has come before this court because the record does not show that any exception was taken to the overruling of that motion. It is only merited tribute to say that this is even more subtile than the reasoning of defendant with reference to the sufficiency of the petition.

**Motion for New Trial Overruled: Proper Exception.**

The entry in the bill of exceptions on which this question has been raised is as follows: "On Monday, March 30, 1908, the same being the sixty-seventh day of the January term, 1908, the court overruled the defendant's foregoing motion for a new trial and motion in arrest of judgment. To which action and ruling of

the court in overruling said motion for a new trial and said motion in arrest of judgment the defendant at the time duly excepted.'' The reasoning is, and it seems to have been suggested by the opinion of the Kansas City Court of Appeals in McKee v. Dry Goods Company, 152 Mo. App. 241, that in judicial practice there may be such a thing as one ruling on two separate and distinct propositions; that it may make a fundamental difference whether the court should say, ''I overrule both these motions;'' or should say, ''I overrule each of these motions.'' We do not understand how its choice in this respect can affect the substantial rights of either party. This view is in accordance with the decision of this court in Weber v. Cable Ry. Co., 100 Mo. 194, 205-206. The overruling of both motions necessarily involved a ruling upon each, and the exception to these rulings, in the very form in which they were made, was necessarily as broad as the language in which they were expressed and to which the exception was taken, and was therefore an exception to each.

III.  In considering the question of the sufficiency of the evidence to sustain the verdict the appellant suggests that the petition avers that at the time the plaintiff attempted to board the car, he was ''standing at or near the intersection of Thirty-first street and College avenue,'' while in fact he was a considerable distance from College avenue, which was the nearest street to the east.  There was no question as to the actual place of the occurrence, and no such variance between the allegation and the fact as to call for the application of the curative provisions of section 1846, Revised Statutes, 1909.

*Invitation to Passenger by Street Car Company.*

The appellant reasons, however, that the court should have acceded to its request to peremptorily instruct in its favor because, under the pleadings and evidence, there could be no recovery unless upon the

theory that, at the time of the injury, the relation of passenger and carrier existed between the parties, and that there is, in this case, no evidence of such relation; and it lays the foundation for the argument by quoting from the opinion of this court in Schepers v. Union Depot Company, 126 Mo. 665, as follows: ''The relation can only be created by contract express or implied. There must always be an offer and request to be carried on one side and an acceptance on the other. . . . There must have been some act on the part of the carrier indicating an acceptance.'' This rule is undoubtedly well stated, but, like all other rules it must be interpreted in connection with the thing to which it applies. A public carrier of passengers like the appellant is under the legal obligation, subject to necessary and reasonable rules, and up to the reasonable limit of its capacity, to carry without discrimination those who present themselves properly for that purpose. The appellant in his brief refers to the ''invitation'' of the carrier as an element of the contract. This ''invitation'' consists of the exhibition of a readiness to perform its duty. The ''offer'' of the potential passenger is the indication to the carrier that he desires to exercise his right to ride upon the terms accorded to all. His ''acceptance'' by the carrier is expressed by affording him the opportunity to do so. When he has availed himself of this acceptance by entering upon the necessary and convenient use of the facilities afforded for that purpose the relation of passenger and carrier with its mutual duties and obligations exists.

The plaintiff was his own sole witness as to the immediate circumstances under which the accident occurred, while the defendant had three witnesses whose testimony covered the same ground, the motorman and conductor operating the car, and a young man who testified that he was a passenger. Their testimony was irreconcilable with the numerical weight of three to one in favor of the defendant. We have carefully read the

entire evidence and find in it nothing which removes it
from the operation of the rule that the weight and
credibility of the evidence is peculiarly within the
province of the jury, and that their verdict will not be
disturbed on appeal if it is supported by substantial
evidence. ''While appellate courts have never released
their hold on testimony so that they may not say there
is no proof, yet the rule is to . . . accord to the triers
of fact, who see and hear, the correlative right to weigh
the testimony.'' [Stumpe v. Kopp, 201 Mo. 412.] The
same rule was lately expressed by Judge
BRACE of this court in the following lan-
guage: ''In answer to the suggestion that
the defendant's demurrer to the evidence
ought to have been sustained, it is only nec-
essary to say that there was evidence tending to prove
that the bill was not owing, and that the argument goes
to the weight of the evidence, with which we have noth-
ing to do.'' [McNulty v. Railroad, 203 Mo. 475, 479.]

Weight of
Evidence:
Matter
for Jury.

A short statement of the testimony tending to
prove the facts relied on by respondent to sustain the
judgment will enable us to apply these principles to the
subject of this paragraph.

The locality in question was outside the area of
paved streets. The accident occurred on Thirty-first
street, which extends westward, the direction in which
the car was running, from Indiana avenue, a distance
of three blocks to Bellefontaine avenue. Between these
points no street approaches it from the south but the
entire distance is included in a pasture. From the north
College avenue, the first street west of Indiana avenue,
is opened into it. The next street to the west is not
opened through the land lying immediately north of
Thirty-first street, but the travel from that direction
seems to have been deflected towards the west, and
comes into Thirty-first street at the point where the
alley east of Bellefontaine avenue was located, which
is variously described in the evidence to be at a distance

of from 100 feet to 200 feet east of the last named avenue. Up to this point all the testimony seems to agree. The plaintiff testified that before the accident he was in the pasture south of Thirty-first street on business connected with the purchase of sod and desired to take a car running west over Thirty-first street to a point beyond Bellefontaine avenue. The defendant had two tracks on Thirty-first street, the north one being used for westbound traffic. He came out of the pasture, pressed down the top wire and stepped over the wire fence which was maintained along the south side of the street at a distance of about twenty-five feet from defendant's south track, and when inside the fence signaled with his hand the car, which was coming from the east and was then about 100 feet from him. The motorman answered his signal by bowing and slowed his car. The plaintiff then passed to the north side of the south track, signaling again to the motorman who was looking at him. At this time the speed of the car had been reduced to about two miles per hour. The front vestibule occupied by the motorman was open on the left side of the car, from which the plaintiff approached, and as it passed the plaintiff, he put his right foot on the step, caught the handhold on the front of the car with his left hand and attempted to grasp the one at the rear of the vestibule opening with his right hand, but had not got a firm hold, when the car started up suddenly, jerking his hand loose and throwing him off the step so that he went down under the wheels. The evidence all agrees that this attempt to get on the car was opposite to the alley or road coming into Thirty-first street from the north, and was on the south side of the moving car.

It is a matter of common knowledge and arising from necessity that street railways do not ordinarily maintain terminal stations for receiving and discharging passengers, which must be done with such frequency as to accomplish the object of that class of pub-

lic service.  It is usually done at street intersections,
but even where this is the case, the precise point de-
pends to a great extent upon the peculiar ideas of those
who operate the facility. Most of us have been annoyed
by a sudden change in the policy of the railway in
this respect, so that when we have stopped at the ''far''
side of the street from which it has formerly picked us
up, we have found that it has made its stopping place
on the other side, and left us to make an attempt on the
next car.  Where the distance is long between the
streets, there are frequently stopping places at inter-
mediate points.  They are sometimes marked and some-
times unmarked.  But notwithstanding these perplex-
ing uncertainties we have never doubted that these pub-
lic utilities have the right either to invite or permit per-
sons to take passage upon their cars at any safe place
along their lines, and having either invited or signified
its permission to receive one for such transportation,
he becomes entitled to all the rights of a passenger,
while employing the facilities that the carrier fur-
nishes, to enable him to avail himself of such invitation
or permission.  Applying these principles to this case
we see no reason why the plaintiff should not, at the
place where this accident occurred, have signified to the
defendant his desire to become a passenger on the ap-
proaching car, nor why the defendant should not,
through its motorman in charge of the movement of the
car, have acceded to that request and have given him
an opportunity to enter the conveyance.

It is intimated, however, by the appellant in its
argument that this permission could only be extended
by bringing the car to a dead stop.  This is a mistake.
It may be granted in any way well calculated to notify
the would-be passenger of that fact, and by giving him
an opportunity to enter the car with perfect safety; and
it seems absurd to say that as a matter of law it is un-
safe for one enjoying all the vigor of health and man-
hood, which the plaintiff said he enjoyed at that time,

to attempt to enter a car moving at the rate of two miles per hour. [Spencer v. Transit Co., 111 Mo. App. 653; Eikenberry v. Transit Co., 103 Mo. App. 442.]

The case does not rest upon the theory that the injury was caused by the fact that the car was in motion at the time the plaintiff attempted to enter it, but that it was caused by the sudden acceleration of is movement while he was in the act of entering, and necessarily in a position rendering him easily susceptible to being thrown down by such a movement. If the plaintiff's testimony were true, and we must assume it to be true for this purpose, he became a passenger when he attempted to enter the car, and the defendant was charged with the exercise of such care as is incident to that relation. Whether or not he was guilty of contributory negligence in so doing was a question for the jury.

IV. While this court will not interfere with verdicts on the ground that they are against the weight of

**Instructions.** the evidence, yet it recognizes that under the operation of this rule extreme cases will arise. In such cases we must be satisfied that the instructions given for the party obtaining the verdict are so unexceptionable as to have fairly and plainly presented the issues; for we will not presume that in a plain case the jury have trodden the facts under their feet when there is reasonable ground to believe that they have been misled by the instructions of the court. [Carroll v. Paul's Administrator, 16 Mo. 226, 240.] Our own statute (R. S. 1909, sec. 2082) emphasizes our duty to consider the effect of the instructions upon the verdict by forbidding us to reverse the judgment, unless we shall believe not only that error was committed but that it materially affected the merits of the action. In the light of these principles it becomes our duty to examine these instructions.

The principal issue presented in the case was squarely upon the question as to whether, as asserted

by the plaintiff, the motorman, upon a signal from him expressive of his desire to take passage upon the car, indicated the defendant's consent by reducing his speed to about two miles per hour, or whether, as asserted by defendant, no signal was given, and the car continued at a speed of ten or twelve miles an hour until the plaintiff was injured in his attempt to board it while running at that speed. The law applicable to that issue was properly explained in the second instruction given for the plaintiff. They were also told in plaintiff's instruction number three that in determining whether or not the plaintiff was guilty of negligence in getting on a moving car they should consider whether, in so doing, he used such care as would have been used by an ordinarily prudent person under the same circumstances.

This refers alike to all conditions of speed which the jury were authorized to infer from any evidence in the case.

Under these circumstances the court, in the first instruction given for plaintiff, told the jury in a general way that "a carrier of passengers is required to use the highest degree of care reasonably practicable among prudent and skillful men in that kind of business to carry its passengers safely, and its failure, if any, to use such care would constitute negligence on the part of such carrier." There was nothing in any of the instructions given by the court which defined the word "passenger" to the jury or told them what facts to which the evidence was applicable would constitute the plaintiff a passenger. The instruction quoted simply assumed that he was somehow a passenger, and told the jury that he was entitled to the high degree of care incident to that relation. This left the triers of the fact in the same position of uncertainty as to what constituted the relation as was the plaintiff when he charged in his petition not that he was a passenger, but that he was getting on the car for the purpose of becoming a passenger, and when he stated in his second instruction,

which was an excellent presentation of the entire issue, that he "stepped upon the step of such car for the purpose of becoming a passenger thereon." It seems unfair that, in the uncertain state of his own mind indicated by these expressions, he should have cast upon the jury the entire burden of determining, as a conclusion of law, the particular phases of the evidence upon which the relation of passenger and carrier might be predicated. Perhaps the solution most evident to them was that the instruction assumed that the relation existed, and that they had no other duty to perform than, assuming its existence in every aspect presented by the evidence, to apply the rule of extraordinary care which it prescribed. Its general character made it applicable to every issue, including that submitted in the plaintiff's third instruction, which, by its terms, applies as well to an attempt to board a car moving at the rate of twelve miles an hour as to the attempt to enter one moving at two miles per hour.

We have thought that the vice of the first instruction might be cured by the closing words which seem to have been an afterthought in the fourth, which are as follows: "but you cannot find for plaintiff except you find the facts to be as outlined in instruction 2." The conjunctive "but," however, with which this modification is introduced, naturally as well as grammatically confines its effect to the connection in which it occurs.

For the reasons given we are compelled to hold that the giving of the first instruction for the plaintiff was error; and believing, as we do, that it was of such a nature as materially to affect the verdict the judgment will be reversed and the cause remanded for a new trial.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.